COMMONWEALTH *vs.* RALPH DEMASI.

Suffolk.   April 3, 1972. — June 5, 1972.

Present: TAURO, C.J., SPIEGEL, BRAUCHER, & HENNESSEY, JJ.

*Search and Seizure.   Probable Cause.*

In a criminal case, where an affidavit, sworn to by a police officer, stated that he had observed the defendant several times within the past month entering a particular apartment, tenanted by someone other than the defendant, and that the officer had seen a car, registered in the defendant's name and wanted by the State Police in connection with a robbery of certain items, parked outside that apartment the morning after the robbery, there was probable cause to believe that the stolen items, which were listed on the search warrant, would be found in the apartment despite the defendant's lack of a possessory interest in those premises. [57]

A seizure by police of articles not described in a valid search warrant but discovered while the police were executing the warrant in a criminal case was lawful where the police knew or had probable cause to believe that the articles seized had been stolen. [58–59]

G. L. c. 276, § 3A, requiring a return to court to be made by officers to whom search warrants are issued, is not applicable with respect to goods lawfully seized by an officer executing a valid warrant but not seized pursuant to that warrant. [59]

FOUR INDICTMENTS found and returned in the Superior Court on January 6 and 15, 1971.

The cases were heard by *Dwyer,* J.

*Kirk Y. Griffin* for the defendant.

*John M. Lynch,* Assistant District Attorney, for the Commonwealth.

SPIEGEL, J.   The defendant was tried and convicted in a jury waived trial on four indictments charging him with receiving stolen goods, G. L. c. 266, § 60.   In his appeal under the provisions of G. L. c. 278, §§ 33A–33H, he assigns as error the denial of his motion to suppress several items "[u]nlawfully [t]aken" from an apartment occupied by him.

The trial judge, after a hearing on the defendant's motion to suppress, made findings and rulings which we summarize.   At 12:50 A.M. on November 7, 1970, Officer Arnold Salley of the Middleborough police department "was in a cruiser in the area of the home of a Moskoff family in Middleboro."   He observed an automobile (Rhode Island license plates XQ-177) parked by the side of the road.   He asked the man sitting behind the wheel (identified as the defendant) if he was all right.   The defendant replied that he was and drove away.   Shortly thereafter, Officer Salley went to the Moskoff home where the Moskoffs informed him that three men had stolen certain items from them.   "Salley listed these items, and subsequently put them out on to the State Police teletype . . . which went out at 2:18 A.M."   It read as follows: "Wanted for the holdup of Moskoffs store rte 18 Middleboro — three white males & RI Reg XQ-177 . . .  1 — 6-2 — 170  slim  build — wearing

green jkt — stocking mask — showed blk revolver 2 — wm — 5–10 slim build no further desc 3 — wm — 5–9 slim build no further desc One subject spoke with a southern accent. Subjs believed to have left scene in a R.I. reg car RI XQ–177. The operator can be identified. Mv registered to Ralph Di Masi of 278 Waverly St Providence RI — 63 Pontiac color gold. Items taken were $1500 cash silver articles mink coat valued at $2200 diamond ring & wedding band valued at $2500 8–10 bottles of whiskey 1 saxiphone [*sic*] & Christmas Club checks. More detailed listed to follow. Attn pd Prov RI — PIs forward any photos available of subject Di Masi to this station."

Sometime between midnight and 8 A.M. on November 7, an informer telephoned Detective Edward Walsh of the Boston police department and told him that the defendant and two other men participated in an armed robbery in Middleborough on November 6, 1970. Walsh had known the informer for several years and had previously received information from him resulting in arrests and convictions. Walsh then checked the teletype at police headquarters and found the above transmission.

"Walsh had been conducting an intensive investigation of . . . [the defendant] since August, 1970. He had been personally involved in surveillance of an apartment at 40 Danforth Street, Jamaica Plain, for several months. He knew that . . . [the defendant] frequented these premises. He had seen him enter 'several times in the last month.' He knew the top floor of 40 Danforth Street to be the apartment of . . . [the defendant] and his girlfriend [one] Miss Vargus; that the house was owned by . . . [the defendant], but the apartment was under the name of Vargus." The automobile described in the teletype was the one which Walsh had seen parked in front of 40 Danforth Street several times prior to November 7. At 10:30 A.M. on November 7, he observed an automobile bearing Rhode Island plates XQ–177 parked in the driveway at 40 Danforth Street.

Walsh then went to the Municipal Court of the West Roxbury District where he swore out a search warrant describing as objects of the search the items named in the teletype. Walsh, Salley, and several other police officers went to the apartment at 40 Danforth Street. Miss Vargus was present in the apartment. Walsh found "in plain view" the following note:[1] "Hi Honey! Went out with the *Cat* & got nothing! Am going over to give Millie the money & then shall be taking a fast ride to Providence, & try to get some money for the diamonds & the fur. Take care. Should be back by 3:00 P.M. Get ready & I will take you downtown. Took $19.00 out of your pocketbook! Love, Ralph"

A large number of valuable articles were in the apartment, including a saxophone (itemized in the search warrant), a television set, a Polaroid camera, three radios, five coats, and numerous earrings and rings. The police seized about thirty-five articles, including the subjects of the present indictments.[2] Several of the goods seized were personal items of the defendant, which were later returned to him. Detective Walsh habitually read police teletypes and knew that radios, televisions and fur coats had been stolen from the Brighton area on October 30. He also "knew that a camera had been taken in Jamaica Plain on August 21. One of the fur coats had a name which Detective Walsh remembered as 'Terry' sewn on the lining, and the polaroid camera had the name 'Jacobs' on the inside of the case. . . . [H]e knew DiMasi 'operated' in Brighton and Jamaica Plain, and that televisions, radios,

---

[1] The note was written in ink on a plain white sheet of paper (six by nine inches) with plenty of space between the words and the lines so that it was readily readable.

[2] Indictment 53536 — one ring and one radio of the property of one Adrian Roberts.

Indictment 53537 — one coat value $50 and one coat value $500 of the property of one Theresa MacDonald.

Indictment 54091 — one Polaroid land camera with case of the property of one Frank C. Jacobs, Jr.

Indictment 54092 — one television and one portable radio of the property of one Frank C. Jacobs.

and fur coats were his usual prey. . . . [H]e related the television, radio, coats, and camera to the Brighton and Jamaica Plain burglaries. Officer Salley identified the saxophone and other goods in the apartment as having been stolen from the Moskoffs."

The judge concluded that "there was probable cause for the issuance of the search warrant, and that entry into the apartment, pursuant to that warrant, was lawful . . . [and] that Detective Walsh had probable cause to believe that the goods described in the indictments before me were in fact stolen, and had a lawful right to seize them, notwithstanding these goods were not described in the warrant."

The defendant argues three issues relative to the denial of his motion to suppress which we discuss seriatim.

1. The defendant first contends that there was no probable cause to believe that the articles listed in the warrant would be found in the apartment of Miss Vargus. In the affidavit accompanying the warrant, Detective Walsh stated: "I have observed Ralp Di Masi entering the dwelling located at 40 Danforth at Jamaica Plain, the 3rd floor apartment of Miss Vargus several times within the past month. On 11–7–70 at 10:30 A.M. . . . I observed the car wanted by the State Police at Middleboro Rhode Island Registration XQ 177 parked in the driveway of 40 Danforth st. Jamaica Plain. I believe that Ralph Di Masi is in the apartment of Miss Vargus at 40 Danforth st. Jamaica Plain [*sic*] and that the property mentioned in this affidavit is within this aprtment [*sic*]." We think that Detective Walsh's observations as stated in the affidavit provided ample justification for a neutral magistrate to conclude that there was probable cause to believe that the stolen goods would be found in Miss Vargus's apartment. Evidence of the defendant's continued presence or, at least, of frequent visits marked the premises as a logical target for the search warrant, despite his lack of a possessory interest in the premises.

2. The defendant next challenges the seizure of goods not listed in the warrant on which the present indictments are based. Once the police are lawfully on certain premises pursuant to a valid search warrant, they have a right to seize articles not named in the warrant if they know or have probable cause to believe that the articles are stolen. *Commonwealth* v. *Wojcik*, 358 Mass. 623, 631. The defendant relies heavily on the *Wojcik* case. There, in holding the particular seizures unlawful, we stated (at p. 98) : "The record before us is devoid of any facts relating to whether the police officers executing the search warrants knew or had probable cause to believe that the articles which they seized had been stolen. The articles were not marked as exhibits at the hearing on the motion to suppress, they are not before us, and there is no description of them in the record beyond the language of the indictments." In the case before us, however, several factors are present which in our view warranted the judge's conclusion that the requisite probable cause was established. First, Detective Walsh had been investigating the defendant and knew that he "operated" in the Brighton-Jamaica Plain area and usually "went after" goods like those present in the apartment. Secondly, Walsh habitually read the teletypes and knew that articles like those in the apartment such as rings, radios, fur coats, cameras, and television sets had been recently stolen in the Brighton-Jamaica Plain area. Walsh testified that he "related" these articles to the "breaks" that he knew had occurred elsewhere in the area. Thirdly, the name "Terry" was sewn in the lining of one fur coat, and the name "Jacobs" was scratched on the inside of the camera case. Finally, there were a large number of valuable goods in the apartment. This in combination with the other factors mentioned above justified the seizure of the goods which are the subjects of the present indictments.

The recent case of *Commonwealth* v. *Hawkins*, 361 Mass. 384, is not to the contrary. There the police, in

the course of a search for drugs pursuant to a valid warrant, uncovered several United States savings bonds with names and addresses different from that of the defendant. A police officer took these to another room where he had a police sergeant call one of the persons whose name and address were on the bonds. This person informed the police that his bonds had been stolen. We held that the seizure of the bonds prior to the telephone call was unlawful because the police then had no knowledge that the bonds were stolen or probably stolen. The instant case is distinguishable because, as we have pointed out, the police did have prior knowledge that the goods which they seized were stolen or probably stolen.

3. The final argument of the defendant is that the goods should have been suppressed because Detective Walsh did not comply with G. L. c. 276, § 3A, as appearing in St. 1964, c. 557, § 5.[3] It appears that Detective Walsh did not inventory the goods which are the subjects of the present indictments on the "return" portion of the warrant or on any additional or supplemental list filed with the court that issued the warrant. We need not decide whether a faulty "return" requires suppression inasmuch as the goods here involved were not seized pursuant to a warrant. Consequently, G. L. c. 276, § 3A, does not apply.

*Judgments affirmed.*

---

[3] "Every officer to whom a warrant to search is issued shall return the same to the court by which it was issued as soon as it has been served and in any event not later than seven days from the date of issuance thereof, with a return of his doings thereon; provided, however, that a justice of the superior court may at any time receive complaints and issue search warrants returnable in seven days before a district court named in such warrant and in that event the officer shall make his return to such district court as directed."