COMMONWEALTH *vs.* ARTHUR J. VENTOLA.

Suffolk.    January 16, 1973. — September 7, 1973.

Present: ROSE, GOODMAN, & ARMSTRONG, JJ.

*Search and Seizure.    Probable Cause.    Receiving Stolen Goods.    Constitutional Law,* Due process of law.

Where a police officer in the exercise of a valid search warrant at a flea market seized items in plain view not described in the warrant which were incompatible with the type of establishment, but were consistent with the fruits of theft in the area with which the officer through his duties was familiar, and where he had maintained a general surveillance of the flea market for an extensive period of time and was familiar with the proprietor's criminal record with respect to receiving stolen goods and possessed the information that the defendant was a fence for stolen property, there was probable cause to seize the articles. [461-467]

The presumption, or more accurately the "permissible inference," of knowledge of the stolen character of property which accompanies unexplained possession of recently stolen goods is constitutional [468]; and where a defendant charged with receiving stolen goods expressly limited a motion for acquittal to the constitutional issue he could not attack on appeal the sufficiency of the proof that certain articles were recently stolen [468].

EIGHT COMPLAINTS received and sworn to in the District Court of Chelsea, one on March 23, 1971, and the others on April 7, 1971.

On appeal to the Superior Court the cases were heard by
*Roy, J.*

*Henry D. Katz* for the defendant.

*Robert Snider,* Assistant District Attorney, for the Com-
monwealth.

ROSE, J.   The defendant was tried and convicted in a
jury waived trial on eight complaints charging him with
receiving stolen property. G. L. c. 266, § 60. In his appeal
under the provisions of G. L. c. 278, §§ 33A-33G, he assigns
as error the denial of his motion to suppress the personal
property which was the subject matter of the complaints
and the denial of his motion for acquittal based on the
Commonwealth's failure to present evidence concerning
the defendant's knowledge that the goods received were
stolen. The trial judge, after a hearing on the defendant's
motion to suppress, made extensive findings of fact and
rulings which we summarize.

On March 22, 1971, Trooper Edward L. O'Hara of the
State Police, accompanied by several other officers, exe-
cuted a search warrant (the validity of which is not
challenged) at a building known as "Arthur's Farm" which
was located on Route C-1 in Revere. Arthur's Farm was a
shabby old building. In the summertime there were fruits
and vegetables displayed in front of the building, but inside
there was little produce, the primary business being the
sale of a great variety of items of personal property. It was
described as a "flea market." It had cases of assorted
merchandise in various conditions and differing values.
Articles of clothing hung from racks and cartons of jewelry,
silverware and appliances were stacked in no apparent
order.

Trooper O'Hara is an experienced State Police officer
attached to the Lynnfield barracks. For a substantial
period of time his duties had included investigations aimed
at the recovery of property stolen as a result of breaking and
entering, particularly on the North Shore. In connection
with such duties he had kept himself informed of recent
breaks and thefts by way of communications with various
local police departments and he had general knowledge of

the different types of articles stolen in the break-ins. While the search and seizures occurred on March 22, 1971, he had been familiar with Arthur's Farm since 1963, and for approximately two and one half years prior thereto he had kept the premises under almost daily observation. He had noted the make and registration numbers of various automobiles coming to and leaving the premises and had observed various items of property being taken in and out of the building which were consistent with a trafficking in stolen or contraband property. He was familiar with the criminal record of the defendant with respect to the receiving of stolen goods, and he testified without objection that he had information which disclosed that the defendant was a fence for stolen property. O'Hara also testified that he knew that the defendant purchased odd lots of any kind of merchandise and conceded that he was aware that at least some of the merchandise had been legally purchased.

O'Hara further testified that in the summer of 1970 he had arrested two truck drivers while they were unloading goods from their truck at the farm, which goods turned out to have been stolen. The drivers were subsequently convicted in the United States District Court of receiving stolen property.

The search warrant authorized a search for untaxed cigarettes. Pursuant to this warrant the officers entered the premises at approximately 4:15 P.M. on March 22. Officer O'Hara entered the building through its main door. He identified himself to the defendant and presented the search warrant. Immediately to the right of the main door was an open doorway to a smaller room. O'Hara entered this room and observed several hundred cartons of cigarettes on open shelves. Upon examination it was ascertained that they had New Hampshire tax stamps, but none from Massachusetts. They were seized.

At the time O'Hara entered this smaller room he observed, all in plain view, fur coats, television sets, sterling silver, jewelry, telephone equipment, clothing, an adding machine, a number of stereo players and tape decks, and various other articles. To the right of where he was standing

he saw two full length fur coats and three fur stoles, all of which he believed to be mink, hanging in disarray on wire hangers on a pipe. One of the coats was hung in a manner that allowed him to observe a label "Kakas Furriers, Newbury Street, Boston" and also the monogram, "bRb." O'Hara then touched the garments, observed that they had no price tags, that the other labels had been removed and that all were used.

By stipulation the Commonwealth and defense counsel have agreed that, if the manager of the Kakas furrier storage room were called as a witness, he would testify that the coat was stored in their storage room and that their records indicated it had not left the room in the ordinary course of business. The owner of the coat had been determined, and her initials corresponded with those in the monogram. The manager did not know when the coat was removed from his warehouse.

After the defendant was arrested, advised of his rights, subdued and handcuffed after a scuffle, O'Hara seized the fur garments. The coat from Kakas Furriers is the subject of complaint no. 56908.

O'Hara then observed in the small room four or five television sets stacked one on top of the other. They appeared to be used and were not in cartons. One set had a broken antenna. These were all seized. The set with the broken antenna is the subject of complaint no. 56902. It has been stipulated that the owner of that set with the broken aerial, RCA Victor 4843685, has been ascertained and that the set had been stolen on March 21, 1971.

O'Hara also observed in the small room two cardboard cartons containing various telephones and extension cords in individual boxes, all new and some wrapped in plastic. The boxes were imprinted with the name of the New England Telephone and Telegraph Company. These items were seized and are the subject of complaint no. 56904. It has been stipulated that if one Lawrence Wheeler, an employee of the telephone company and service foreman, were to have been a witness, he would have testified that all of the equipment was the property of the telephone com-

pany and was not for sale. He would have been unable to state where the phones were taken from or when they had left the possession of the company.

O'Hara then seized a quantity of loose silver that was on the floor in cardboard cartons or in silver boxes. Some of the silver had monograms. Some of the silver is the subject of complaint no. 56906 and consists of ninety one pieces of sterling silver table settings with the monograms buffed off and twelve assorted serving pieces. It has been stipulated that the owner of the property is known and that the property had been stolen from his home on December 2, 1970.

Several days prior to the search O'Hara had been informed by a sergeant of the Melrose police department of a housebreak in which a Sears Roebuck sewing machine, a box of jewelry and various pieces of serving silver had been stolen. On the floor in the main room near the desk of the defendant O'Hara observed a Sears Roebuck portable sewing machine, an open box containing jewelry and serving silver. These items were seized and made subject of complaint no. 56901. It has been stipulated that the owner is known and that the goods had been stolen on March 10, 1971.

Continuing his search for cigarettes, O'Hara opened the drawers of the defendant's desk and discovered a carton of "Oval" cigarettes on which no Massachusetts tax had been paid. In the same drawer he saw six pewter tankards, each having a tag affixed to its handle giving a short history of the item. There was also a price tag and a tag with a sales code. The name of Lord and Taylor appeared on all of the tags. Complaint no. 56907 relates to these items.

It has been stipulated that if one Elizabeth McDonough, the manager of Lord and Taylor, were to testify, she would have stated that her records indicated that the tankards stolen were still in inventory and thus unsold and that the handwriting on the tags was hers. She did not know when the tankards had left the store.

O'Hara seized the tankards and the carton of untaxed cigarettes. He then observed to the right of the desk on the

floor, an open leather jewelry box which contained numerous items in disarray, none of which had price tags on them. The box and its contents are the subject of complaint no. 56905. It has been stipulated that the owner had been ascertained and that the property had been stolen on March 15, 1971.

In the same vicinity as the jewelry O'Hara observed a tape recorder or dictograph. This was also seized and was made subject of complaint no. 56903. It has been stipulated that the owner had been determined and that the machine had been stolen on March 18, 1971. Various other items were seized during the search, the owners of which have not been ascertained and consequently they have not been made subject to any complaints.

The law in this Commonwealth is clear relative to searches and seizures of this type. Once the police are lawfully on certain premises pursuant to a valid search warrant, they have a right to seize any article they observe in plain view, even though not described in the warrant, so long as they know or have probable cause to believe that the article is stolen, contraband or an instrumentality or means by which a crime has been committed. *Commonwealth* v. *Wojcik,* 358 Mass. 623, 626-628 (1971). *Commonwealth* v. *DeMasi,* 362 Mass. 53, 58 (1972).

It is clear that all of the items seized were in O'Hara's plain view. The question remaining for us to consider is whether O'Hara had probable cause to believe that the goods were stolen. The trial judge stated in his findings of fact and rulings that "I find as a fact that O'Hara, because of the information he possessed as to the various types of articles stolen in breaks on the North Shore, because of his surveillance of the premises which were being searched, because of his knowledge of Ventola, and because of the type and condition of the articles seized, had probable cause and reasonable grounds for concluding that the seized items were stolen property."

We conclude that the judge was warranted in so finding. In so concluding we are influenced by a recent decision of

the Supreme Judicial Court. In *Commonwealth* v. *DeMasi,* 362 Mass. 53 (1972), the court upheld the seizure of goods that were not specified in the search warrant on the grounds that the officer had probable cause to believe that the goods were stolen. The court gave four main reasons for so holding. "First, Detective Walsh had been investigating the defendant and knew that he 'operated' in the Brighton-Jamaica Plain area and usually 'went after' goods like those present in the apartment. Secondly, Walsh habitually read the teletypes and knew that articles like those in the apartment such as rings, radios, fur coats, cameras, and television sets had been recently stolen in the Brighton-Jamaica Plain area. Walsh testified that he 'related' these articles to the 'breaks' that he knew had occurred elsewhere in the area. Thirdly, the name 'Terry' was sewn in the lining of one fur coat, and the name 'Jacobs' was scratched on the inside of the camera case. Finally there were a large number of valuable goods in the apartment."

The instant case is remarkably parallel to that situation. Trooper O'Hara knew the defendant and was familiar with his criminal record for receiving stolen property and larceny and was aware that he was in the business of fencing stolen goods. O'Hara had been aware of the reputation of Arthur's Farm as a depository of stolen goods even prior to his employment as a State trooper in 1963. For approximately the two and one-half years prior to the search he had been making almost daily observations of the farm, noting the persons he saw entering and leaving, their addresses, vehicles and criminal records, if any. In the summer of 1970, he had arrested two men who were unloading a truck at the farm who were subsequently convicted in the United States District Court.

He had also familiarized himself with teletype messages relative to the items stolen in the North Shore area and communicated with various police departments two or three times a week relative to stolen goods. He testified that the items usually stolen were sterling silver, television sets, cameras, tape recorders, adding machines, typewriters, furs and antiques. And indeed, when he entered the

premises he saw these and many other kinds of items of varying values and descriptions.

It is appropriate at this juncture to discuss seriatim the various articles and goods included in each of the eight complaints.

1. *Complaint No. 56901* concerns the Sears sewing machine, one set and case of silverware and assorted jewelry. Trooper O'Hara had had prior knowledge of a recent theft of three articles meeting this general description and found these articles next to each other at the Farm. This prior knowledge, the juxtaposition of the articles, along with the general information that O'Hara had relative to the defendant and his operation, was enough to constitute probable cause.

2. *Complaints Nos. 56902, 56903, 56905, and 56906* all relate to various merchandise in used condition, stored in a haphazard manner, which fell into the categories of goods that Officer O'Hara testified he knew had been stolen. Their condition, manner of display, O'Hara's general knowledge of the defendant, the fact that these goods fell into the above-mentioned categories and the many valuable goods found all lead us to conclude that the finding that Officer O'Hara did have probable cause to believe those items had been stolen was warranted.

3. *Complaint No. 56904* relates to the equipment owned by the New England Telephone and Telegraph Company. Here too we rule that the judge's findings of probable cause was warranted. It would have been reasonable for O'Hara to conclude that this merchandise was not generally for sale to or by the public and therefore had been stolen.

4. *Complaint No. 56907* relates to the merchandise from Lord and Taylor. Again we rule that the judge's finding was warranted. Certainly the price tags and sales code on each piece were inconsistent with the manner in which Lord and Taylor would normally be expected to deliver its goods to its customers.

5. *Complaint No. 56908* relates to the fur coat from Kakas Furriers. This also fell into the category of goods that O'Hara knew to be stolen. Mink coats, though casually

Commonwealth v. Ventola.

displayed, could hardly be considered indigenous to a "flea market." Furthermore, the label on the coat and the monogram provided additional reasons for concluding that probable cause existed here. *Commonwealth* v. *DeMasi,* 362 Mass. 53 (1972).

We therefore conclude that the finding that Trooper O'Hara had probable cause to seize all of the goods designated by the eight complaints was fully warranted. We take care to note that this opinion is not to be construed as condoning a general exploratory search, resulting in indiscriminate seizures. The seizures here were not indiscriminate. In the case of each of the items made the subject of complaint its condition, the manner in which it was kept, its incongruity with the kind of business ostensibly conducted on the premises, whether taken separately or in combination, gave this particular police officer reasonable cause to believe they had been stolen. The many unique factors relative to O'Hara's knowledge make the conclusion of a valid search and seizure compelling under these special circumstances.

In this case the police officer had conducted a patient and exhaustive investigation, including personal observation of the premises. He possessed knowledge of the type of articles involved in typical instances of house breaking and larceny. He was aware of the character of the operation of the owner as a fence and his past criminal record in this area of activity. He had observed articles incompatible with the type of establishment but consistent with the fruits of thievery. Under these circumstances the police officer's conduct as to probable cause was both logical and reasonable. To rule otherwise would be to place unwarranted and unnecessary restraints upon the police, and to make a flea market a virtually impregnable base for a fencing operation. "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar* v. *United States,* 338 U. S. 160, 175 (1949).

The defendant's second argument, concerning the denial of his general motion for acquittal, specifically attacks the presumption or, more accurately, "the permissible inference" of knowledge which accompanies unexplained possession of recently stolen goods. In *Commonwealth* v. *Wilbur,* 353 Mass. 376 (1967), the Supreme Judicial Court considered this argument and held this inference to be proper and not in derogation of the defendant's constitutional rights. The defendant argues further that the goods which are the subjects of complaints nos. 56904, 56907, and 56908 in any event cannot be sheltered by the umbrella of the inference since no date of their theft has been alleged. The defendant's motion for. acquittal was expressly limited to the constitutional issue. He cannot now attack the sufficiency of the proof that certain articles were recently stolen. See *Serabian* v. *Tatian,* 229 Mass. 191, 192.

*Judgments affirmed.*