**UNITED STATES of America, Appellant,**

v.

**James E. CLARK, Appellee.**

**No. 75–1887.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 9, 1976.

Decided March 17, 1976.

---

Robert L. Sikma, Asst. U. S. Atty., Sioux City, Iowa, for appellant; Evan L. Hultman, U. S. Atty. and Robert L. Sikma, Asst. U. S. Atty., Sioux City, Iowa, on the brief.

Bradford F. Kollars, Sioux City, Iowa, for appellee; H. A. McQueen and Bradford F. Kollars, Sioux City, Iowa, on the brief.

Before LAY, HEANEY and STEPHEN-SON, Circuit Judges.

STEPHENSON, Circuit Judge.

The central issue raised in this appeal is whether the district court [1] erred in sustaining appellee's motion to suppress the introduction into evidence of a semiautomatic pistol which was allegedly obtained as the result of an illegal search and seizure. We conclude that the search and seizure committed in the instant case was unreasonable. Accordingly, we affirm.

On December 19, 1974, at approximately 11:00 a. m., criminal investigators from South Dakota executed a search warrant for controlled substances at the residence and repair shop of appellee, James E. Clark. Clark owned a motorcycle repair shop which was attached to his home, located in a rural area adjacent to the south side of North Sioux City, South Dakota. In conjunction with the search, the investigators executed an arrest warrant for James E. Clark based on unauthorized distribution of controlled substances.

The warrants were executed by Special Agent Donald E. Gromer and another agent, both representing the Division of Criminal Investigation for South Dakota. Upon the agents' arrival at the repair shop, they observed Clark at the cash register and two other individuals in the shop area of the premises. The agents immediately arrested Clark, handcuffed him, and advised him of his constitutional rights. Agent Gromer inquired if there were any other people on the premises, and Clark responded that there were not. Agent Gromer then showed Clark the search warrant and informed Clark that the officers were going to conduct a search of the premises.

During the initial period of the search, Clark remained near the cash register in the shop and was guarded by a deputy sheriff, two or three highway patrolmen, a North Sioux City patrolman and some additional South Dakota investigators, who had arrived in the shop immediately following Clark's arrest. Clark's two acquaintances remained seated on a tool box in the shop. The officers searched the shop, the basement and the residence, but no controlled substances were found. Despite the fact that the search warrant was designed to locate controlled substances, officers examined hand tools, cycle motors and other property located in the shop area of the premises. Serial numbers taken from the inspected property were recorded on clipboards carried by the agents.

Sometime later Clark was allowed to accompany the agents in a further search of the residence area. At this time Agent Gromer asked Clark if he had any firearms, and Clark reported that there were three or four shoulder-type rifles hanging in the living room and a 9-mm. Browning semiautomatic handgun in his bedroom in the nightstand drawer. Clark advised the officers that the guns were loaded. The agents then took Clark into the bedroom, where the pistol was unloaded. Eventually Clark was returned to the living room area while the agents searched the other rooms of the residence. During this time Clark observed officers recording the serial numbers of his stereo equipment. Agent Gromer, without Clark's knowledge, also copied down the serial number of the pistol in the bedroom.

On January 14, 1975, Agent Gromer advised John E. Cronin, a special agent of the Bureau of Alcohol, Tobacco and Firearms, that Clark was in possession of a pistol and provided Cronin with the serial number of the firearm. The federal agent traced the pistol to a firearms dealer in Iowa and discovered several possible violations of federal firearms statutes that proscribe illegal interstate transportation of a firearm and false statements made in connection with the purchase of a firearm. *See* 18 U.S.C. §§ 922, 924. Based on the trace of the serial number and the resultant investigation, a second search warrant, particularly

---

1. The Honorable Edward J. McManus, Chief Judge, United States District Court, Northern District of Iowa.

describing the pistol found in Clark's bedroom, was issued, and Clark's residence and shop were again searched. The 9-mm. Browning semiautomatic pistol was seized as a consequence of this search.

Subsequently, Clark was indicted on three counts of making false statements in connection with the acquisition of a firearm and illegal interstate transportation of a firearm. *See* 18 U.S.C. §§ 922, 924. Prior to trial Clark filed a motion to suppress the admission into evidence of the 9-mm. Browning semiautomatic pistol and all other evidence obtained as a result of the search of Clark's premises on December 19, 1974. Clark also requested the restoration of the pistol. The motion to suppress was specifically based on Clark's allegation that the initial search was an unconstitutional extension of the controlled substance search warrant since the investigating officers had proceeded to inventory substantially all of Clark's personal and business property. The district court found that the investigating agents did not have sufficient cause to be apprehensive about their physical safety and concluded that the search conducted on December 19, 1974, constituted an unwarranted extension of the plain view doctrine. Accordingly, the district court, citing *United States v. Gray,* 484 F.2d 352 (6th Cir.), *cert. denied,* 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1973), granted the motion to suppress.

The government appeals, contending that the recording of a serial number of a handgun and the tracing of the origin of the gun was reasonable police conduct which was not violative of appellee's Fourth Amendment rights. Specifically, the government asserts that the investigating officers' actions in the instant case constituted only a limited intrusion into appellee's privacy which should be deemed reasonable because of the strong countervailing public interest in effective law enforcement. *Cf. Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Secondarily, it is contended that the plain view doctrine should be construed in such a way as to justify the police conduct in question. Appellee Clark, on the other hand, asserts that the search conducted on December 19, 1974, constituted an impermissible exploratory search violative of the Fourth Amendment.

The Fourth Amendment requires that search warrants particularly describe objects to be seized. This specificity of description requirement furthers the Fourth Amendment's goal of privacy by ensuring that even searches deemed necessary and supported by a magistrate's determination of probable cause should be as limited as possible. *See Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971). In this connection, the Supreme Court in *Coolidge* warned that "the specific evil is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion *per se,* but of a general, exploratory rummaging in a person's belongings." *Id. See generally Stanford v. Texas,* 379 U.S. 476, 480–86, 85 S.Ct. 506, 509–512, 13 L.Ed.2d 431, 434–438 (1964); *Marron v. United States,* 275 U.S. 192, 195–96, 48 S.Ct. 74, 75–76, 72 L.Ed.2d 231, 236–237 (1927); *Boyd v. United States,* 116 U.S. 616, 624–30, 6 S.Ct. 524, 528–532, 29 L.Ed. 746, 749–751 (1886).

The search of appellee's premises conducted on December 19, 1974, went beyond the scope of the search warrant. The search warrant was issued as authorization for a search for controlled substances only. Despite this limited authorization, the record demonstrates that the investigating officers proceeded to inventory a significant quantity of Clark's personal and business property. Serial numbers were methodically taken from motorcycles, tools, and other shop equipment. The agents also recorded serial numbers from Clark's television, stereo equipment, and other personal effects. Moreover, the inspection of appellee's personal and business property and the concomitant recordation of serial numbers taken from that property were accomplished without the consent of Clark. In fact, the recordation of the serial number on the pistol was done without Clark's knowledge. It is beyond dispute that the random recordation of serial numbers from

items of personal and business property could not have furthered the officers' ostensible and otherwise legitimate search for controlled substances. Consequently, we conclude that the search conducted on December 19, 1974, was an exploratory search violative of the appellee's Fourth Amendment right of privacy. *See Coolidge v. New Hampshire,* 403 U.S. 443, 446, 91 S.Ct. at 2027, 29 L.Ed.2d at 571 (1971); *United States v. Gray,* 484 F.2d 352, 354–56 (6th Cir.), *cert. denied,* 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1973); *United States v. Sokolow,* 450 F.2d 324, 326 (5th Cir. 1971).

■■■ Correspondingly, we do not believe that the exploratory search of Clark's business and residence can be justified under the plain view doctrine. It is well established that under certain circumstances the police may seize objects not specified in a warrant. *See Harris v. United States,* 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067, 1070 (1968). But, in order to qualify for the plain view exception, it must be shown (1) that the initial intrusion which afforded the authorities the plain view was lawful; (2) that the discovery of the evidence was inadvertent; and (3) that the incriminating nature of the evidence was immediately apparent. *Coolidge v. New Hampshire,* 403 U.S. 443, 464–73, 91 S.Ct. 2022, 2037–2042, 29 L.Ed.2d 564, 581–587 (1971); *United States v. Wilson,* 524 F.2d 595, 598 (8th Cir. 1975); *United States v. Williams,* 523 F.2d 64, 66 (8th Cir. 1975).

The first requirement, a lawful initial intrusion, was clearly met in the instant case since the investigating officers were acting pursuant to a legitimate search warrant allowing a search for any controlled substances located on Clark's premises. The second requirement, an inadvertent discovery, also appears to have been satisfied. The record does not indicate that the officers had known prior to the search the existence and location of the pistol eventually found in Clark's bedroom.

■■ The third requirement, however, was not met in the instant case. There is no adequate foundation in the record to support the conclusion that the incriminating nature of the pistol was "immediately apparent." The record fails to reveal a sufficient factual basis which would have given the officers reasonable cause to believe the pistol was contraband. *Cf. United States v. Wilson,* 524 F.2d 595, 598 (8th Cir. 1975). There was no nexus between the pistol and the crime of unauthorized distribution of a controlled substance. Similarly, the record does not indicate that the officers at the time of the initial search were motivated by any specific, reasonable cause to believe the pistol was evidence of any crime.[2] *Cf. United States v. Golay,* 502 F.2d 182, 185 (8th Cir. 1974); *United States v. Carwell,* 491 F.2d 1334, 1335–36 (8th Cir.), *cert. denied,* 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 699 (1974). In actuality, it was necessary for Agent Gromer to turn over the pistol's serial number to the federal agent and for the federal agent to trace the origin of the pistol before its incriminating nature could be said to be immediately apparent.

Under these circumstances, we regard the actions of the police officers, which resulted in a wholesale examination of appellee's property unrelated to the authorized search for controlled substances, as inconsistent with the thrust of the plain view doctrine. As the Supreme Court in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), explained:

> [T]he extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the "plain view" doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges.

*Id.* at 466, 91 S.Ct. at 2038, 29 L.Ed.2d at 583. Because of its exploratory nature, the

---

**2.** There is evidence in the record that Clark, prior to the initial search, had been charged with controlled substance violations in Iowa. *Cf.* 18 U.S.C. § 922. *See also* 18 U.S.C.App. § 1202. However, Agent Gromer in his testi-

mony at the suppression hearing did not rely upon this factual basis or articulate any other valid reason as justification for the recordation of the serial numbers from appellee's property.

search conducted on December 19, 1974, which resulted in the recordation of the serial number of the pistol as well as other property, was unreasonable and violative of the Fourth Amendment.[3] To conclude otherwise would allow the plain view doctrine to be utilized as a basis for condoning general, exploratory searches contrary to the spirit of the Fourth Amendment. For the same reason, we find the government's limited intrusion theory based on *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), untenable under the circumstances of the instant case.

The pistol, therefore, was properly suppressed since the second search warrant, although otherwise valid, was impermissibly tainted by the exploratory search conducted on December 19, 1974. *See Wong Sun v. United States,* 371 U.S. 471, 484–87, 83 S.Ct. 407, 415–417, 9 L.Ed.2d 441, 453–455 (1963).

Affirmed.

---

**3.** Parenthetically, we observe that the record does not support the government's contention that the officers' actions should be justified as an attempt to maximize their own safety or to prevent the destruction of evidence.