Roland BYNUM, Appellant,

v.

UNITED STATES, Appellee.

No. 10754.

District of Columbia Court of Appeals.

Argued Dec. 14, 1976.

Decided May 8, 1978.

Warren C. Nighswander, Public Defender Service, Washington, D. C., for appellant. Frederick H. Weisberg, Public Defender Service, Washington, D. C., also entered an appearance for appellant.

Steven R. Schaars, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Iraline G. Barnes, Neil I. Levy and Carol E. Bruce, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY and HARRIS, Associate Judges, and PAIR, Associate Judge, Retired.

KELLY, Associate Judge:

Appellant was convicted of receiving stolen property. D.C.Code 1973, § 22–2205. He contends in this appeal that the stolen item, a tape recorder, was seized impermissibly because it was taken during the execution of a search warrant which facially was invalid for lack of probable cause. He claims, alternatively, that if the search warrant was valid, the seizure of the tape recorder exceeded the scope of the warrant. We reverse.

I

On April 24, 1975, a police officer prepared an affidavit in support of an application for a search warrant which read:

At approximately 1500 hours, on April 23, 1975 the undersigned Officer along with his partner Officer John K. Mangan of the First District Casual Clothes monitored a flash look-out for an old Valiant, light blue in color, bearing Maryland tags or possibly D.C. tags with a skeleton hanging from the rear view mirror. At approximately 1540 hours we were cruising south in the 1000 block of 3rd Street, S.W. when we observed the above described vehicle proceeding north in the 1000 block of 3rd Street, S.W. and then turn east in the 200 block of K Street. We subsequently stopped the vehicle in the alley west side of the 1100 block of Delaware Avenue, S.W. The driver of the auto, Roland Bynum of 231 K Street, S.W., negro male, D.O.B. 1–14–52, and the passenger Jeffrey Alan Greenfield of 200 I Street, S.W., negro male, D.O.B. 7–14–55, were transported back to the

scene of the Burglary II for which the look-out for the auto was flashed. I.D.'s on the two subjects were negative. The subjects were then released. Prior to release I removed a pair of brown cloth gloves from Bynum's rear pants pocket and there was a pry bar in the auto he was driving on the floor to the left of the driver's seat.

Due to the fact that the subject Bynum lives within two blocks of the Burglary scene, and he was driving the auto when it was stopped we request that a search warrant be issued to search 231 K Street, S.W. to attempt to recover the property taken in the Burglary. The property is described below:

One white metal wedding band with Ivory trim

One ring of Greek origin with a Greek goddess holding a snake in her hands

One pair of black Opera binoculars

One black plastic portable radio name and serial numbers unknown

One KLH FM Stereo system with a Girard turntable and two walnut speakers

One Brother portable sewing machine pale grey and blue in color

One Sony table radio AM/FM with 5 bands black in color

One Rolex watch silver metal with a white face and silver metal band

One antique Flemish tapestry dark brown wool background with a countryside setting with pink and white flamingos in same

Subsequent investigation revealed that in fact there had been a Burglary at 156 G St. S.W. A search of the automobile revealed no proceeds of the Burglary.

The affidavit, which was reviewed, approved, and signed by an Assistant United States Attorney, was presented to a Superior Court judge. The warrant issued and was executed the same day. Appellant's mother was at home during the search. Upon demand, she provided the officers with the key to a padlocked linen closet. In the closet, one of the officers found a tape recorder with a name and address etched on it. Knowing that the address was that of a townhouse which had been the site of a previous burglary, the officer seized the item "as suspected proceeds of crime." Appellant's mother told the officers that appellant had given her the recorder. The officer later learned that the recorder, identified by its serial number, had indeed been stolen. Appellant was arrested under the authority of a warrant and was prosecuted. Following the denial of his motion to suppress, appellant waived his right to a jury and went to trial on stipulated facts.

As to appellant's first claim of error, we recognize, of course, that reviewing courts must give substantial deference to the issuing judge's or magistrate's decision, *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and that warrants must be construed not with an exacting eye for detail but with a common sense realism, *United States v. Harris,* 403 U.S. 573, 577, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (plurality opinion), *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). However, our scope of review in determining the validity of any warrant is confined solely to a consideration of the affidavit itself. *Aguilar v. Texas,* 378 U.S. 108, 109 n.1, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Giordenello v. United States,* 357 U.S. 480, 486, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). As a reviewing court, we must be sure that the issuing magistrate performs a " 'neutral and detached' function and [does] not serve merely as a rubber stamp for the police." *Id.* 378 U.S. at 111, 84 S.Ct. at 1512.

In the instant case, Officer Shedeck, the affiant, concluded that since appellant lived in the vicinity of the crime scene and was found with a pair of cloth gloves in his pocket and a "pry" bar in his car[1] that a search warrant should issue for his [mother's] entire premises "to attempt to recover the property taken in the Burglary." Two significant facts which appear in the affidavit and which the trial court seemingly discounted were that when returned to the

---

1. Neither of these objects is of a sinister nature.

scene, an eyewitness failed to identify appellant, and that no proceeds of the burglary were found in the car appellant was driving.

■■■ When appellant was not identified and the search of the car failed to reveal any proceeds of a crime, the police were correct in releasing him because, as they recognized and so testified, there was no probable cause to place appellant under arrest. Therefore, it is difficult to see that with no additional facts why the trial court concluded that probable cause existed to issue the disputed search warrant. It is true that testimony was presented at the hearing on the motion to suppress regarding the subsequent investigation of the burglary which supplements the information known to the police at the time the warrant issued.[2] However, as we have said, only facts contained within the affidavit as submitted to the issuing judge or magistrate can be considered on review of the sufficiency of the warrant: *i. e.,* whether it was issued on probable cause. *See Aguilar v. Texas, supra* at 109 n.1, 84 S.Ct. 1509. *See also Tabasko v. Barton,* 472 F.2d 871, 873 (6th Cir. 1972), *cert. denied,* 412 U.S. 908, 93 S.Ct. 2288, 36 L.Ed.2d 974 (1973); *United States v. Kahn,* 471 F.2d 191, 197 (7th Cir. 1972).

The problem here is not that the affidavit in support of the search warrant is technically imprecise or poorly drafted, but that it does not state sufficient facts to support an independent determination by the issuing judicial officer that probable cause exists to enter and search a person's home. *See, e. g., Whiteley v. Warden,* 401 U.S. 560, 564, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *Spinelli v. United States, supra; United States v. Ventresca, supra; Aguilar v. Texas, supra; United States v. Giordenello, supra.* Accordingly, we conclude that the search warrant was facially invalid.

## II

■■■ The resolution of the warrant issue dispenses with the necessity of reviewing the validity of the seizure of the tape recorder. However, assuming arguendo that the search warrant was valid, the seizure of the tape recorder would have exceeded the warrant's scope. The Fourth Amendment requires that items to be seized pursuant to a warrant must be specifically listed or generally described within that warrant. *See Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed. 231 (1927).

■■ In *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the Supreme Court made it clear that seizure of items in plain view may not be made unless it is "immediately apparent to the police that they have evidence before them." *Id.* at 466, 91 S.Ct. at 2038. The plain view exception is not one which allows the seizure of an item on mere suspicion.

The question therefore becomes whether the cassette player was immediately recognizable to Officer Mangan as evidence of a crime. On the record of the instant case, we conclude in the negative. Officer Mangan testified at the motions hearing that when he saw the address "234 G Street, S.W. etched on the side of the tape player," he was reminded of a reported burglary at that address "a month and a half to two months earlier." He conceded that he had no follow-up information regarding that burglary and that the case might have been closed without his knowledge. Nevertheless, he decided to seize the player "as suspected proceeds of crime." After seizing the item, Officer Mangan returned to police headquarters where he ascertained that a burglary had in fact occurred some four months earlier at 234 G Street, S.W., and a tape recorder was one of the items listed as stolen.

■■■ Where police officers, pursuant to a warrant authorizing a search of a house for specific items, come across some other article in plain view, there must at least be probable cause to believe that arti-

2. The motion to suppress was heard piecemeal by two different trial judges, the first of whom ruled on the sufficiency of the warrant and the second on the validity of the seizure.

cle is incriminating evidence. *United States v. Johnson,* 541 F.2d 1311, 1316 (8th Cir. 1976); *United States v. Clark,* 531 F.2d 928, 932 (8th Cir. 1976); *United States v. Truitt,* 521 F.2d 1174 (6th Cir. 1975); *United States v. Blake,* 484 F.2d 50 (8th Cir. 1973). We would be hard pressed to conclude that Officer Mangan had the requisite probable cause at the time he seized the recorder. At best, he gained that probable cause at the station house when he verified his suspicions as true. Probable cause gained after a search or seizure cannot be used in retrospect to justify that search or seizure. *See United States v. Carter,* 173 U.S.App.D.C. 54, 522 F.2d 666 (1975); *United States v. Cunningham,* 138 U.S.App.D.C. 29, 424 F.2d 942, *cert. denied sub nom. Thaxton v. United States,* 399 U.S. 914, 90 S.Ct. 2218, 26 L.Ed.2d 572 (1970); *Whiteley v. Warden, supra; Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Thus, even where a police officer is properly on the premises it is not enough that he have a mere suspicion that what he sees in plain view may be incriminating evidence. It was not immediately apparent to Officer Mangan that the tape player was evidence of a crime.

*Reversed.*

HARRIS, Associate Judge, dissenting:

In respectfully dissenting, I first set forth certain basic propositions concerning search warrants and affidavits in support of their issuance.

The law prefers the police to act on the authority of a warrant. *See Aguilar v. Texas,* 378 U.S. 108, 110–11, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Jones v. United States,* 362 U.S. 257, 270–71, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *United States v. Lefkowitz,* 285 U.S. 452, 464, 52 S.Ct. 420, 76 L.Ed. 877 (1932). Consequently, in a close case, an appellate court is more likely to uphold the validity of a search if the probable cause determination was made by a judge (or a magistrate), rather than by a police officer. *See United States v. Ventresca,* 380 U.S. 102, 106, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Aguilar v. Texas, supra,*

378 U.S. at 110–11, 84 S.Ct. 1509; *cf. Whiteley v. Warden,* 401 U.S. 560, 565–66, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). Reviewing courts must grant great deference to the issuing judge's decision, *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and "in a doubtful or marginal case a search under a warrant may be sustained where without one it would fall." *United States v. Ventresca, supra,* 380 U.S. at 106, 85 S.Ct. at 744.

Applications for warrants are drafted, as was done in this case, by laymen working in haste under the pressures of a criminal investigation. Therefore, they are to be construed not with an exacting eye for detail, but—as the majority recognizes but then disregards—with a common sense realism. *United States v. Harris,* 403 U.S. 573, 577, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (plurality opinion); *United States v. Ventresca, supra,* 380 U.S. at 108, 85 S.Ct. 741, *see Tyler v. United States,* D.C.App., 298 A.2d 224, 227 (1972). Probable cause requires only a probability of criminality, rather than evidence sufficient to establish a prima facie case. *Spinelli v. United States, supra,* 393 U.S. at 419, 89 S.Ct. 584. In reviewing the sufficiency of an affidavit in support of a warrant, an appellate court must consider the totality of its content. The majority runs afoul of these concepts in its unduly selective analysis of the affidavit.

The progression of this case was typical. The officer who was investigating the burglary determined to seek a search warrant, and prepared an affidavit in support thereof. He took it to an Assistant United States Attorney for review; it was approved. The officer then took the affidavit to an experienced trial judge, who concluded that it supported the issuance of a warrant.

Viewed properly in its totality, the affidavit readily conveyed what had happened and what the officer knew prior to seeking the warrant. A burglary had been committed. Eyewitnesses could not identify the offenders, but could and did identify their car. A description of the car was broadcast

by the police; it was "an old Valiant, light blue in color, bearing Maryland tags or possibly D. C. tags with a skeleton hanging from the rear view mirror." The car which appellant was driving matched the description the officers had received, including its particularly distinctive ornament, the skeleton hanging from the rear view mirror. The affidavit made it clear that the vehicle which the officers stopped 40 minutes after the burglary was the vehicle which fit that description. (The majority opinion fails to mention this fact.)

Appellant had a pair of cloth gloves— scarcely carried for warmth in late April— in his pocket, and a pry bar lay by his seat.[1] The car contained no proceeds of the crime. The car and its two occupants were taken back to the scene of the burglary. At the scene, an eyewitness (there had been two; only one remained) continued to be unable to identify appellant and his companion as the burglars, and they were released. However, as is readily apparent from a common sense evaluation of the officers' subsequent course of conduct, the eyewitness confirmed the identification of the car as the one used by the burglars.[2]

Thus, the facts were not complex. The affidavit unquestionably revealed that (1) a burglary had been committed; (2) the car appellant was driving matched the description of the car used by the burglars; (3) appellant was stopped 40 minutes later in the same area; (4) he had a pair of gloves and a pry bar with him; (5) the proceeds of the crime were not in his car; (6) appellant lived near the scene of the burglary; and

(7) the car was identified at the scene of the crime. The officers quite logically deduced that appellant was likely to have been one of the burglars, and that there was a good likelihood that he had secreted the proceeds of the crime in his nearby home. The trial judge agreed, and concluded that probable cause existed to support the issuance of a search warrant. I too agree, and find no infirmity in the issuance of the warrant. Nonetheless, even if it is assumed arguendo that this is a relatively close case, the eminently sensible preference for warrants in marginal cases leads me to the conclusion that the warrant was validly issued. *See United States v. Ventresca, supra,* 380 U.S. at 109, 85 S.Ct. 741; *Jones v. United States, supra,* 362 U.S. at 270–71, 80 S.Ct. 725.

Beyond my firm belief in the absence of any error, I am concerned that the majority's rejection of the sufficiency of the affidavit in this case *might prompt police officers to conclude that candor may be unwise,* and that incomplete and selective disclosure presents the best way to obtain a search warrant.[3] The Supreme Court has recognized that "a grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." *United States v. Ventresca, supra,* 380 U.S. at 108, 85 S.Ct. at 746. Such a result hardly would promote Fourth Amendment values.

I turn now to the constitutionality of the seizure of the stolen tape recorder in appellant's home. What I consider to be the

---

1. The majority states: "Neither of these subjects is of a sinister nature." I draw modest comfort from the fact that the majority is unwilling to go so far as to say that the combination of gloves and a pry bar has no sinister connotation.

2. At the hearing on appellant's motion to suppress the tape recorder, the officer testified that the witness did identify the car appellant was driving as the same vehicle that earlier had pulled away from the scene of the burglary. While that fact is not specifically set forth in the affidavit, obviously if the witness had said it was the wrong car, the officer immediately would have terminated his interest in appellant. (The officer had not hesitated to ac-

knowledge that identifications could not be made of the two men; it may be assumed that he would have been as candid concerning identification of the vehicle.) Assuredly the judge who issued the warrant was not precluded from drawing the only logical inference from the totality of the affidavit.

3. Of course, if the eyewitness had been able to *identify appellant (rather than just his car),* there would have been probable cause to arrest him. In the affidavit, the officer quite properly stated that "I.D.'s on the two subjects were negative" so that the judge could have a full picture of the development of the investigation.

warrant's validity made the officer's presence in appellant's home lawful. *See United States v. Gray,* 484 F.2d 352, 355 (6th Cir. 1973), *cert. denied,* 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974). However, a seizure of items not specifically listed or generally described in a warrant cannot be made under its authority. *See Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *Stanford v. Texas,* 379 U.S. 476, 485, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965); *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed. 1016 (1927). The seizure of an item not specified in a warrant nevertheless is sustainable when the object permissibly comes within the executing officer's plain view. This exception to the warrant requirement necessitates both that the officer's presence be lawful and that his discovery of the evidence be inadvertent. *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plurality opinion); *Brooks v. United States,* D.C.App., 367 A.2d 1297, 1305 (1976); *see also Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). It also is limited by the requirement that the incriminating nature of the evidence be apparent.[4] *Coolidge v. New Hampshire, supra,* 403 U.S. at 465–66, 91 S.Ct. 2022; *see United States v. Williams,* 523 F.2d 64, 66–67 (8th Cir. 1975), *cert. denied,* 423 U.S. 1090, 96 S.Ct. 884, 47 L.Ed.2d 101 (1976); *Stanley v. Georgia,* 394 U.S. 557, 571, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) (STEWART, J., concurring).

The limited scope of the plain view exception is in harmony with its rationale. The initial intrusion into a suspect's privacy is justified by a warrant (or by some other legally valid reason). The additional intrusion triggered by the seizure thereafter of an item which is in plain view is minimal, and is countered by the increased benefit to effective law enforcement. *See Coolidge v. New Hampshire, supra,* 403 U.S. at 467–68, 91 S.Ct. 2022. To be sure, the police officers here could not have seized in their discretion a variety of the chattels in appellant's house on a surmise that they also might have been stolen. The loss of privacy increases greatly, and the incremental benefit to law enforcement declines correspondingly, if the police seize unsuspicious objects. For that reason, the plain view doctrine does not sanction indiscriminate exploratory rummaging. Such a broad interpretation would nullify the Fourth Amendment's goal of prohibiting exploratory searches and betray the constitutional heritage discussed by the Supreme Court in *Stanford v. Texas, supra,* 379 U.S. at 481–86, 85 S.Ct. 506.

I have stated my belief that the officers were lawfully in the house. They thus had a right to search the closet, *cf. Warden v. Hayden,* 387 U.S. 294, 299–300, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (search of washing machine for weapons justified), notwithstanding appellant's mother's claim that the closet contained only her personal belongings. *See United States v. Canestri,* 518 F.2d 269, 273–74 (2d Cir. 1975). A padlocked closet in a suspect's home is a logical location for the concealment of stolen items, and no evidence was presented at the suppression hearing to indicate that appellant did not have access to the closet.[5] *Ibid.* I share the following views expressed by the Ninth Circuit:

> [I]f that which is seizable and the place where it is to be sought are specified by order of court or magistrate, the fact that [the] search for it ranged at large throughout a house into areas where per-

---

**4.** "An example of the applicability of the 'plain view' doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character." *Coolidge v. New Hampshire, supra,* 403 U.S. at 465, 91 S.Ct. at 2037. "[T]he extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." *Id.,* at 466, 91 S.Ct. at 2038.

**5.** Appellant no longer contends that the search of the closet was outside the scope of the warrant, which was a claim he asserted at the suppression hearing.

sonal privacy is most in need of protection is not enough to render the search unlawful as "general" if it was reasonable to suppose that the object of the search could be found where it was sought. *E. g., Warden v. Hayden,* 387 U.S. 294, 299–300, 87 S.Ct. 1642, 18 L.Ed.2d 782, . . . (1967). [*United States v. Turner,* 528 F.2d 143, 159 (9th Cir.), *cert. denied,* 429 U.S. 837, 97 S.Ct. 105, 50 L.Ed.2d 103 (1975).]

Appellant cites *Commonwealth v. Wojcik,* 358 Mass. 623, 266 N.E.2d 645 (1971), and contends that the tape recorder's incriminating quality was not so readily apparent as to justify its seizure. In *Wojcik,* officers searching a house and a garage under a warrant for specified stolen goods found other items which appeared to them to be stolen, some of which bore the names and addresses of their owners. The officers searching the house did not know that anything had been stolen from the respective owners or from the respective addresses. To the Massachusetts court, that distinction was crucial. *Id.,* at 650, 266 N.E.2d 645. *See also Commonwealth v. DeMasi,* 362 Mass. 53, 283 N.E.2d 845 (1972); *Commonwealth v. Ventola,* 1 Mass.App.Ct. 459, 300 N.E.2d 918 (App.1973). In any event, I think that *Wojcik* and *Commonwealth v. Hawkins,* 361 Mass. 384, 280 N.E.2d 665 (1972), reflect too restrictive a concept of probable cause with respect to seizing objects in plain view. Numerous decisions in United States courts of appeals show a greater (and more realistic) willingness to allow the police to draw sensible inferences from strong probabilities. *See Mapp v. Warden,* 531 F.2d 1167 (2d Cir.), *cert. denied,* 429 U.S. 982, 97 S.Ct. 498, 50 L.Ed.2d 592 (1976); *United States v. Mason,* 173 U.S.App.D.C. 173, 177–78, 523 F.2d 1122, 1126–27 (1975); *United States v. Sedillo,*

496 F.2d 151 (9th Cir.), *cert. denied,* 419 U.S. 947, 95 S.Ct. 211, 42 L.Ed.2d 168 (1974); *United States v. Damitz,* 495 F.2d 50, 56 (9th Cir. 1974); *United States v. Wheeler,* 148 U.S.App.D.C. 204, 205, 459 F.2d 1228, 1229 (1972). I agree with the Fourth Circuit that

[f]or an object to be "incriminating" for constitutional purposes, the seizing authority need only have reasonable or probable cause to believe that the object is evidence of a crime. [*United States v. Ross,* 527 F.2d 984, 985 (4th Cir. 1975), *cert. denied,* 424 U.S. 945, 96 S.Ct. 1414, 47 L.Ed.2d 351 (1976).][6]

In seeking to justify its resolution of this issue, the majority downplays the professionalism of the police, making the seizure of the tape recorder appear to be almost a fortuity. The majority states in part:

We would be hard pressed to conclude that Officer Mangan had the requisite probable cause at the time he seized the recorder. At best, he gained that probable cause at the station house when he verified his suspicions as true.

I shall not characterize such a treatment of the record, but rather simply quote from the testimony of the officer:

Q. Did you find anything in the linen closet which looked suspicious to you?

A. Yes. There were several electrical appliances in the linen closet and one of them had the name of a gentleman from 234 G Street, Southwest, etched, and his name and address etched right in the side of it, and I asked Mrs. Bynum if this belonged to her and she stated yes, and I asked her where did she get it from, and she said my son Roland gave it to me.

Q. And at that point did you have reason to believe that this was stolen merchandise?

---

6. The other cases upon which appellant relies do not support his position. They dealt with the seizure of items by officers who had no knowledge that they were evidence of other crimes. *See United States v. Clark,* 531 F.2d 928 (8th Cir. 1976); *United States v. Gray,* 484 F.2d 352 (6th Cir. 1973), *cert. denied,* 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974); *State v. Murray,* 84 Wash.2d 527, 527 P.2d 1303

(1974) (en banc), *cert. denied,* 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975); *State v. Keefe,* 13 Wash.App. 829, 537 P.2d 795 (Ct. App.1975). In fact, *United States v. Clark, supra,* enunciates a standard identical to the one I espouse, namely, that the officers must have reasonable cause to believe the seized item is contraband. 531 F.2d at 932.

A.  Yes, I did, I had prior knowledge that a burglary had occurred earlier, at 234 G Street, Southwest.

Q.  Then what did you do?

A.  I wrote down this particular item and serial number on the copy of the search warrant and told Mrs. Bynum that I was seizing that as suspected proceeds of crime.

The officer's knowledge of the prior burglary, coupled with the presence in appellant's closet of an item bearing the name and address of an individual whom the officer knew to have been the victim of a recent burglary, leads me to conclude beyond any doubt that the tape recorder was seized permissibly.[7]  I would affirm the conviction.

---

**7.**  The seizure also was valid under D.C. Code 1973, §§ 23–521(d)(1) and –524(e).  On these facts, a statutory analysis would track the constitutional one.