JOSEPH A. BREAR, JR., trustee,[1] *vs.* EDWARD P. FAGAN
& another.[2]

Suffolk. May 5, 2006. - June 19, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Real Property,* Restrictions.

This court concluded that G. L. c. 184, § 27 (*a*), which provides that the
identity of persons or lands benefited by a restriction on land must be
stated in the instrument imposing the restriction, supplanted the common-
law rule that allowed the identity of those benefited by a restriction on
land to be inferred from all the circumstances; therefore, a Land Court
judge properly concluded that deed restrictions on the land at issue were
not enforceable, where the deeds imposing the restrictions failed to identify
any land or person to benefit from those restrictions. [71-76]
This court concluded that a restriction of a specified duration cannot be
extended beyond its stated term by filing a notice of restriction pursuant to
G. L. c. 184, § 27 (*b*) (2), and therefore, where the deeds imposing restric-
tions on the land at issue stated that the restrictions would last for a period
of thirty years, the restrictions were no longer in effect once that period
ended, despite the plaintiff's filing of a notice of restriction. [76-78]

CIVIL ACTION commenced in the Land Court Department on
March 5, 2002.

The case was heard by *Leon J. Lombardi,* J.

The Supreme Judicial Court granted an application for direct
appellate review.

*Donald K. Freyleue* for the plaintiff.

*Michael P. McCarron* for the defendants.

SOSMAN, J. In this appeal, we are asked to decide whether the
common-law rule, which allowed the identity of those benefited
by restrictions on land to be inferred from all the circumstances
(see *Baker* v. *Seneca,* 329 Mass. 736, 739 [1953]; *Snow* v. *Van
Dam,* 291 Mass. 477, 481 [1935]), retains vitality in the wake

[1]Of the Buttonwood Nominee Trust.
[2]Anna M. Fagan.

of G. L. c. 184, § 27 (*a*), which provides that the identity of persons or lands benefited by such a restriction must be "stated" in the instrument imposing the restriction. We also consider whether a restriction of a specified duration can be extended beyond its stated term by filing a notice of restriction pursuant to G. L. c. 184, § 27 (*b*) (2). For the following reasons, we conclude that § 27 (*a*) requires that the instrument contain an express identification of those persons or lands benefited by a restriction, thus supplanting the common-law rule, and that the stated period of a restriction may not be extended by way of a notice of restriction under § 27 (*b*) (2). We therefore affirm a judgment in favor of the defendants, as the plaintiff's land was not expressly identified as land to be benefited by the restrictions imposed on the defendants' land, and the restrictions had expired by their own terms, notwithstanding the recording of a notice of restriction seeking to extend them.

1. *Background.* Joseph A. Brear, Jr., as trustee of the Button-wood Nominee Trust (Buttonwood Trust), brought the present action against Edward and Anna Fagan, claiming that the Fagans' planned subdivision and development of their land violated various restrictions imposed by the deeds to the Fagans' predecessors in title. The matter was tried before a judge in the Land Court, whose findings of fact are summarized as follows.[3]

In 1972, the trustees of the Alice H. Burrage Trust (Burrage Trust) owned a tract of land in Ipswich containing in excess of one hundred acres. On September 19, 1972, the Burrage Trust recorded a plan dividing the northerly forty acres of the land into four parcels, and conveyed the northernmost parcel (parcel 4) to Bertha L. Nikas and the adjoining parcel (parcel 3) to George A. Nikas. The deeds to the Nikases contained detailed restrictions concerning the uses of the land conveyed and the structures that could be built thereon. The deeds stated that the restrictive covenants were to run with the land and be binding for a period of thirty years from the date of recording. On November 30, 1972, the Burrage Trust conveyed yet another

---

[3]Neither side claims any error in the judge's factual findings, and the facts pertaining to the statutory issues before us appear to be undisputed matters of record.

parcel (parcel 2) to George A. Nikas, with identical restrictions and an identical thirty-year period set forth in the deed. The final parcel (parcel 1) was conveyed to a third party.

The Burrage Trust retained the remaining sixty acres (homestead parcel) until January 4, 1978, when the homestead parcel was conveyed to the Buttonwood Trust. The deed to the Buttonwood Trust stated that the property was conveyed "together with the benefit of restrictions contained in prior deeds of record of the [Burrage Trust]." In accordance with the terms of the Buttonwood Trust, one of the beneficiaries resides on the homestead parcel and uses part of the land (along with other land owned by the Buttonwood Trust) for agricultural purposes.

By way of a series of conveyances, Edward and Anna Fagan acquired portions of parcels 2, 3, and 4 in March and December of 1979. The deeds to the Fagans each recited that the premises were conveyed subject to and with the benefit of restrictions previously recorded, to the extent that those restrictions were "in force and applicable." The Fagans ultimately decided to subdivide their land, planning to keep one lot as their own residence and to develop the remaining six lots in the subdivision. After initially disapproving the Fagans' subdivision in May, 2003, the planning board of Ipswich ultimately voted to approve the subdivision, filing the approval decision on December 12, 2003.

Meanwhile, apparently in response to the Fagans' plans, the plaintiff filed the present action on March 5, 2002, seeking a declaration that the deed restrictions on the Fagans' property were valid and enforceable and that they would limit the number of structures that could be built on that property. On June 6, 2002, the plaintiff recorded three instruments, each of which recited that "[t]his instrument is a NOTICE OF EXTENSION OF RESTRICTIONS pursuant to Massachusetts General Laws, Chapter 184, Sections 27-29." The notices, all signed by the plaintiff as trustee of the Buttonwood Trust, described the homestead parcel as the land benefited by the restrictions, described the Fagans' portions of parcels 2, 3, and 4 as the lands subject to the restrictions, identified the Fagans as the current owners of those lands, and specified the deeds imposing

the restrictions along with the recording information for those deeds.[4]

Based on these facts, the judge concluded that the recording of the notices of restriction pursuant to G. L. c. 184, § 27 (*b*) (2), within thirty years of the date that the restrictions had first been imposed by the deeds from the Burrage Trust, operated to extend those restrictions. However, where the deeds creating the restrictions contained no express identification of any person or land benefited by the restrictions, G. L. c. 184, § 27 (*a*), precluded the Buttonwood Trust from enforcing the restrictions. The plaintiff appealed, and we granted his application for direct appellate review.

2. *Discussion.* a. *Identification of persons and lands benefited by restrictions on land.* At common law, if a deed or other instrument imposing a restriction on land was silent or ambiguous with respect to what other land was to be benefited by the restriction, the identity of the benefited lands could be determined by resort to inference from "the situation of the property and the surrounding circumstances." *Peck* v. *Conway*, 119 Mass. 546, 549 (1876). See *Baker* v. *Seneca*, 329 Mass. 736, 739 (1953); *Lovell* v. *Columbian Nat'l Life Ins. Co.*, 294 Mass. 473, 477-478 (1936); *Snow* v. *Van Dam*, 291 Mass. 477, 481 (1935); *Sprague* v. *Kimball*, 213 Mass. 380, 382 (1913); *Welch* v. *Austin*, 187 Mass. 256, 259-260 (1905); *Hano* v. *Bigelow*, 155 Mass. 341, 343 (1892); *Hogan* v. *Barry*, 143 Mass. 538, 539 (1887). A plaintiff seeking to enforce such a restriction had the burden to show that the benefit of that restriction was appurtenant to his land; if, after analysis of the terms of the instrument and the surrounding circumstances, there remained ambiguity on the point, that ambiguity was to be resolved in favor of freeing the land from restriction. *Lovell* v. *Columbian Nat'l Life Ins. Co.*, *supra* at 477. *St. Botolph Club, Inc.* v. *Brookline Trust Co.*, 292 Mass. 430, 433 (1935). The plaintiff claims that where the Burrage Trust retained land (i.e., the homestead parcel) in the immediate vicinity of the northern parcels that were conveyed subject to the restrictions, and indicated in the deed to the Buttonwood Trust that the

---

[4]There is no dispute that the notices of restriction met the technical requirements of G. L. c. 184, § 27 (*b*).

homestead parcel was benefited by the restrictions imposed in prior deeds of the Burrage Trust, the judge should have inferred that the Burrage Trust intended the homestead parcel to be benefited by the restrictions imposed on parcels 2, 3, and 4. See *Baker* v. *Seneca, supra* (inferring that restriction was imposed for benefit of grantor's other land); *Welch* v. *Austin, supra*; *Peck* v. *Conway, supra.*

Assuming (without deciding) that the suggested inference is sound, the plaintiff's ability to enforce the restrictions still depends on G. L. c. 184, § 27, which provides in relevant part as follows: "No restriction imposed after [December 31, 1961,] shall be enforceable: — (*a*) unless the person seeking enforcement (1) is a party to the instrument imposing the restriction and it is stated to be for his benefit or is entitled to such benefit as a successor to such party, or (2) is an owner of an interest in benefited land which either adjoins the subject parcel at the time enforcement is sought or is described in the instrument imposing the restriction and is stated therein to be benefited . . . ."

When interpreting this language, we recognize that we should not interpret a statute "as effecting a material change in or a repeal of the common law unless the intent to do so is clearly expressed." *Pineo* v. *White*, 320 Mass. 487, 491 (1946). See *Commercial Wharf E. Condominium Ass'n* v. *Waterfront Parking Corp.*, 407 Mass. 123, 129 (1990), *S.C.*, 412 Mass. 309 (1992) (court does not presume that Legislature intended "a radical change in the common law without a clear expression of such intent"). Here, we are satisfied that the Legislature's intent to modify the common law has been expressed with the requisite clarity by both the language of § 27 (*a*) and the legislative history of that provision.

Turning first to the language, the plaintiff argues that the statutory requirement that the identity of the restriction's beneficiaries be "stated" in the instrument may be satisfied by an "implied" statement in that instrument, thereby harmonizing § 27 (*a*) with the common law. The plaintiff thus contends that § 27 (*a*) was not intended to supplant the common-law rule, at least with regard to such ostensibly obvious beneficiaries as the original grantor, the grantor's retained land, and the grantor's successors in title to that land. We disagree.

Even with regard to an original "party" to the instrument imposing the restriction (i.e., the grantor), § 27 (*a*) precludes enforcement unless the restriction is "stated to be for his benefit." If, as plaintiff contends, one could readily infer that any grantor intended that his own land be benefited by the restrictions he imposed, the requirement that there be a "state-[ment]" that the restriction is "for [the grantor's] benefit" would be superfluous. See *Bynes* v. *School Comm. of Boston*, 411 Mass. 264, 268 (1991), and cases cited (court should interpret statute in manner that avoids making terms superfluous). Thus, under § 27 (*a*) (1), not even the Burrage Trust as original grantor had the power to enforce the restrictions, and the Buttonwood Trust's status as the successor in title to the Burrage Trust is of no avail. Beyond the requirement imposed on the grantor as an original party to the instrument, other owners of land must meet the requirement that the benefited land be "*described in* the instrument imposing the restriction" and be "*stated therein* to be benefited" (emphasis added).[5] This wording makes clear that both the description of the land and a stated intention to benefit that land must be expressed "in" the deed itself, not supplied by reference to surrounding facts and circumstances.

The legislative history reinforces the conclusion that the Legislature intended to modify the common law with respect to enforcement of restrictions on land. The various reforms set forth in G. L. c. 184, §§ 26-30, were first enacted in 1961 (St. 1961, c. 448, § 1), after proposed legislation had been reviewed and revised by the Judicial Council (Council). See Thirty-Sixth Report of the Judicial Council, Pub. Doc. No. 144 at 80-87 (1960) (Council Report). The purpose of the legislation was to provide a way for landowners "to remove or prevent the

---

[5]Due to the lack of punctuation, the statute is arguably ambiguous with respect to the requirements for land that adjoins the restricted land. Read one way, § 27 (*a*) (2) exempts adjoining land from the requirement that it be "described in the instrument" but still requires that an intent to benefit the adjoining land be stated "therein." Read another way, the requirement that the intent to benefit be stated "therein" refers only to nonadjoining property that must be "described in the instrument," because "therein" refers to "in the instrument," which itself pertains only to nonadjoining property. We need not resolve this ambiguity, as the plaintiff does not rely on a theory that the homestead parcel "adjoins" the defendants' land.

enforcement of obsolete, uncertain or unreasonable restrictions." *Id.* at 81. In the draft legislation that accompanied the Council Report, the Council noted that restrictions posed an obstacle to the optimal use of land and impaired marketability, that restrictions were "often common to many parcels in different ownership and imposed by many different deeds over periods of years so that it is exceedingly difficult to determine all who may have rights to enforce them," that many titles were encumbered by restrictions that had become "obsolete," that "the grounds upon which such restrictions may be declared unenforceable are not now sufficiently clear or adequate to protect the public interest," and that "proceedings now available for determining enforceability of such restrictions are inadequate." *Id.* at 82-83. In short, the Council's view was that existing common-law rules governing restrictions on land, including rules with respect to the identification of those who could properly enforce such restrictions, were not suitable in light of modern conditions. The legislation was explicitly designed to supplant those common-law rules with clearer, more definitive, and more efficient methods of resolving the enforceability of land restrictions.

As a result of the Council's recommendations, the specific requirements that are now part of § 27 (*a*) were expanded and strengthened. The original bill, 1960 House Doc. No. 1367, was referred to the Council for its study and report. Council Report, *supra* at 80, 81. In that original version, the provision with respect to the identity of beneficiaries dealt only with land that did not adjoin the land subject to the restriction, and merely required that the lands in question be described in the instrument: restrictions were not enforceable "[b]y owners of any land intended to have the benefit not adjoining the lot unless the lot restricted and the land intended to be benefited are both described in the instrument imposing the restriction by reference to a recorded plan or plans showing them." 1960 House Doc. No. 1367, § 1. The Council's proposed legislation added the requirement that even a "party to the instrument" could not enforce the restriction unless "it is stated to be for his benefit," and the requirement that other benefited land had to be "described in the instrument imposing the restriction *and* . . . stated therein to be benefited" (emphasis added). Council

Report, *supra* at 84. The mere description of benefited land by deed reference to a plan did not suffice — without an actual statement that the restriction was for the benefit of the described land, that land owner could not enforce the restriction. Section 27 (*a*) as originally enacted was identical to the version recommended by the Council, see St. 1961, c. 448, § 1, indicating that the Legislature concurred in the Council's assessment that the identification of beneficiaries who could enforce land restrictions had become "exceedingly difficult" under the common-law rule, Council Report, *supra* at 83, and that the identity of beneficiaries should be explicitly stated in the instrument creating the restrictions.

Thus, with respect to the identification of the beneficiaries of land restrictions, § 27 (*a*) requires specificity and supplants the common-law rule that allowed identification to be a matter of inference.[6] Here, the deeds imposing the restrictions on parcels 2, 3, and 4 failed to identify any land or person to be benefited from those restrictions. Cf. *Atwood* v. *Walter*, 47 Mass. App. Ct. 508, 512 (1999) (instrument stated that restrictions were "[f]or" plaintiff and "enforceable by" plaintiff; purpose to benefit plaintiff adequately expressed in compliance with § 27 [*a*]).

The plaintiff protests that our interpretation of § 27 (*a*) renders the restrictions in the Burrage Trust deeds a nullity from their inception (as there has never been anyone entitled to

---

[6]The plaintiff cites cases approving the use of inference from surrounding circumstances when interpreting the substantive meaning of land restrictions. See, e.g., *Walker* v. *Gross*, 362 Mass. 703, 706 (1972); *Chatham Conservation Found., Inc.* v. *Farber*, 56 Mass. App. Ct. 584, 590 (2002); *Maddalena* v. *Brand*, 7 Mass. App. Ct. 466, 467 (1979). In none of those cases was the plaintiff's power to enforce the restriction at issue. That extrinsic sources may assist in interpreting the wording of a restriction itself does not affect the statutory requirement with respect to the identity of those who may enforce the restriction. In *Gulf Oil Corp.* v. *Fall River Hous. Auth.*, 364 Mass. 492, 498 (1974), another case on which the plaintiff relies, the court did cite the common-law rule with respect to inferring the identity of lands to be benefited by restrictions. However, in that case, the instrument imposing the restrictions specified that they were "for the benefit and in favor of, and enforceable by" any property owner in the urban renewal project area who was also subject to the restrictions. *Id.* Although the case cited the common law and did not cite or consider § 27 (*a*), it is apparent from the wording of the deeds and the urban renewal plans that the identification of the persons and lands benefited met the requirements of § 27 (*a*).

enforce them), whereas the parties must have intended that someone have the benefit of the extensive and carefully crafted restrictions set forth in the deeds. It is true that the restrictions have been rendered unenforceable, notwithstanding the parties' presumed intent that they have some practical application, but that is because the instruments in question failed to comply with § 27 (*a*). Failure to heed the technical requirements of various statutes may operate to frustrate the original intent of the parties, but in such cases, the Legislature has determined that some other purpose should outweigh the parties' intent. Here, the Legislature has determined that the need for precision and clarity with respect to the enforceability of land restrictions is of paramount importance, and if an instrument creating restrictions fails to provide the requisite precision and clarity, alternative but less certain methods of demonstrating the intent of the parties are not to be employed. Where the deeds from the Burrage Trust did not state that the homestead parcel (or any other parcel) was to be benefited, the plaintiff, as current owner of the homestead parcel, may not enforce the restrictions.

b. *Extension of restrictions under G. L. c. 184, § 27* (b) (2). Although the inability of the plaintiff to satisfy § 27 (*a*) is dispositive of the present appeal, we address the alternative ground raised by the defendants, namely, that the restrictions had already expired by their own terms.[7] The judge concluded that the restrictions themselves were still in effect because the plaintiff had filed notices pursuant to G. L. c. 184, § 27 (*b*) (2). This was error, as nothing in § 27 (*b*) (2) allows a party unilaterally to extend the restrictions beyond the term previously agreed to by the parties.

Section 27 (*b*) (2) provides that no restriction shall be "enforceable" after thirty years from its imposition, unless "a notice of restriction is recorded before the expiration of the thirty years, and in case of such recording, twenty years have

[7]The plaintiff contends that the defendants may not raise this argument because they did not file a cross appeal. Where the defendants prevailed below, they "may present on appeal any ground which was previously asserted below in support of the judgment." *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 43 (1977). They do not need to file a cross appeal unless they are seeking a judgment more favorable to them than the judgment entered below. *Id.* at 43 n.5.

not expired after the recording of any notice of restriction without the recording of a further notice of restriction."[8] The statute then provides that a notice of restriction shall not "extend the period of enforceability" unless the notices meet certain technical requirements. *Id.* Once the stated term of a restriction has expired, the prior filing of a notice that would extend the "period of enforceability" accomplishes nothing, because there is nothing left to "enforce[]." As we explained in *Stop & Shop Supermarket Co.* v. *Urstadt Biddle Props., Inc.*, 433 Mass. 285, 289 (2001), the effect of filing a notice of restriction under § 27 (*b*) is to "extend the 'period of enforceability' for any agreed term of restriction that is longer than thirty years." The filing cannot operate to extend the term of the restriction itself, but is merely a prerequisite to the continued "enforceability" of a restriction that is still in effect.

The defendants correctly note that if a notice of restriction under § 27 (*b*) (2) operated to extend the term of the restriction itself, a restriction for a stated period could be made to last forever merely by one party's filing of successive notices of restriction at the appropriate intervals. However, restrictions that are "unlimited as to time" are "limited to the term of thirty years" by operation of G. L. c. 184, § 23, and they may not be extended beyond that thirty-year term by filing a notice of restriction under § 27 (*b*). *Stop & Shop Supermarket Co.* v. *Urstadt Biddle Props., Inc., supra* at 288-289. It would be anomalous to restrict to thirty years a restriction that the parties intended to last permanently, while allowing one party to create a permanent restriction when the parties originally agreed that the restriction would last only thirty years. Moreover, as discussed above, one of the purposes of the reforms enacted as G. L. c. 184, §§ 26-30, was to enable landowners to rid their land of obsolete restrictions, and to provide definitive endpoints to the term of such restrictions. As in *Stop & Shop Supermarket Co.* v. *Urstadt Biddle Props., Inc., supra,* we must interpret § 27 (*b*) in a manner consistent with § 23, which expressly precludes the imposition of perpetual restrictions on land.

---

[8]The enforceability of restrictions that are part of a "common scheme" is governed by § 27 (*b*) (1). The plaintiff does not contend that his land is benefited as part of a "common scheme."

Here, the deeds imposing the restrictions on parcels 2, 3, and 4 stated that the restrictions would last for a period of thirty years, and those deeds were delivered and recorded in September and November, 1972. The plaintiff's filing of notices of restriction in June, 2002, did nothing to extend the period of the restrictions. Once that thirty-year period ended in the fall of 2002, the restrictions were no longer in effect.

*Judgment affirmed.*