Kaplan, Mitchell H., J.

INTRODUCTION

This action arises out of the defendant, Gray Wolf Development Corporation’s (“Gray Wolf’), proposal to construct a residence, horse stable, riding arena and related buildings on a 46.56-acre parcel of land in Mendon, Massachusetts (the “Property”). The plaintiffs Jon Rosenfeld, Patricia Rosenfeld and Ellen Rosenfeld, as Trustee of the Ellen Realty Trust (the “Ellen Trust” and, collectively, the “Rosenfelds”) own land that abuts the Property. In this action the Rosenfelds appeal, pursuant to G.L.c. 40A, §17, from a decision of the defendant, Mendon Zoning Board of Appeals (the “Board”) granting Gray Wolf a special permit to develop the Property (Counts I-III); seek to enforce restrictions in the deed to the Property (Count IV); and assert related claims for breach of contract (CountV) and misrepresentation (Count VI). This case *321 is before the court on the motion of defendants Gray Wolf and Michael J. Salvador for summary judgment.[3] For the reasons set forth below, the defendants’ motion is ALLOWED.

BACKGROUND

The undisputed facts and the disputed facts viewed in the light most favorable to the nonmoving party are as follows.
The Property is commonly referred to as 161 Mill-ville Road, Mendon, Massachusetts. In 1998, the Property was part of a larger parcel of land owned by Evelyn Lamothe. Under the applicable Mendon residential zoning bylaws, it lacked sufficient frontage for construction of a residence. Lamothe, therefore, applied to the Board for a variance, which was granted in October 1998. The variance permitted the construction of a single-family residence and also required imposition of a deed restriction preventing “future subdivision for residential purposes.” The variance included the standard condition that, “[i]f the rights authorized herein are not exercised within one year, they will lapse as provided in Massachusetts General Laws, Chapter 40A, Section 10.” No construction took place over the next year. At some point, Lamothe applied for an amendment to this 1998 variance, and, in December 1999, the Board issued a second variance amending the first. This variance permitted subdivision of the lot such that approximately 46 acres could be used for the construction of a single-family dwelling (this parcel became the Property) and roughly 20 acres would be donated to Mendon to be added to the Mendon Town Forest. The variance again required that restrictions similar to those described in the 1998 variance be incorporated in the deed, in particular, that only one residential dwelling may be constructed on the 46-acre lot. In January 2000, Lamothe recorded a plan of this property division approved by the Board in the registry of deeds. On June 16, 2000, defendant William Therrien purchased the Property from Lamothe. As found by the Land Court in a case described below, once again no construction on the property authorized by the variance was undertaken in the year following its grant.
Jon Rosenfeld and Patricia Rosenfeld purchased the property located at 165 Millville Road on April 17, 2001. On December 3, 2003, the Ellen Trust purchased 163 Millville Road from Therrien. Both of those parcels abut the Property. On that same day, Ellen Trust and Jon Rosenfeld entered into an agreement (the Agreement) with Therrien and defendant Michael Salvador,[4] who according to the Agreement “expected to purchase the [Property],” in which Ellen Trust granted a temporary easement, for a period of a year, over a small portion of 163 Millville Road to Salvador and Therrien to “pass and re-pass and to bring and place on the driveway all personnel, tools, equipment, vehicles and appliances necessary for the construction of a single family residence . . .” on the Property. The Agreement further provided that (i) Rosenfeld and the Ellen Trust would not “oppose or object to the construction of a single family dwelling on [the Property] or to the issuance of any further approvals or permits required by [Therrien] or Salvador from the Town of Mendon,” and (ii) Therrien and Salvador would restore certain areas to their natural state.
Gray Wolf purchased the Property from Therrien in May 2004. In October 2004, Gray Wolf applied for a special permit from the Board (pursuant to section II.D of zoning bylaws) to build a residence, but also two housekeeping units and other structures such as stables, barns and storage sheds on the property appropriate for a horse stable/riding facility which could accommodate twenty-four horses and required attendants. The Board held public hearings on Gray Wolf s proposal in November 2005, after which it voted to deny the application. The Board’s decision stated in relevant part: “the requested special permit went far beyond the scope envisioned by the Board in its 1998 variance approval and appeared to be more of a commercial venture than a single family property.” Gray Wolf appealed from this decision to the Land Court.
In a decision dated January 15, 2008, the Land Court annulled the Board’s denial of Gray Wolfs request for a special permit. Gray Wolf Development Corp. v. Roger Marquis etal, misc. case no. 05-317254 (the “Gray Wolf Decision”). The Land Court held that the variances the Board previously granted to develop the Property for a single residence had lapsed, because the development “rights authorized under it were not exercised [and] Gray Wolf is left with a lot which is unbuildable due to insufficient frontage. Given the lapse, neither the benefits nor the conditions of the variance apply to the [Property].” Slip Op. at 17. The Land Court then went on to state that because the Board’s decision rested on an incorrect legal basis, i.e., the variance was in force, it failed to address the question: did Gray Wolfs proposal qualify for the agricultural exemption to zoning bylaws provided by G.L.c. 40A, §3? The Land Court further commented that, if §3 did apply to the proposal, “the [Board] may subject the Property only to reasonable regulations” in deciding whether to issue a special permit for the necessary structures. The Land Court remanded the matter to the Board to allow Gray Wolf to resubmit its application and for the Board to consider whether the agricultural exemption applied to it. The Board moved for reconsideration of so much of the Gray Wolf Decision as held that the variances had lapsed, submitting additional evidentiary materials on that point. On May 2, 2008, the Land Court denied that motion, and on August 8, 2008, issued a detailed remand order with respect to future proceedings before the Board on Gray Wolfs proposal.
Thereafter, Gray Wolf resubmitted its application for a special permit. The Board held further hearings, concluded that the proposal constituted an agricul *322 tural use under G.L.c. 128, §1A, and granted a special permit authorizing the residence and horse stable/riding facility, including stables for twenty-four horses, subject to certain stated limitations on where structures could be built.

DISCUSSION

Summary judgment will be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983). To prevail on its summary judgment motion, the moving party must affirmatively demonstrate the absence of a triable issue, and that the summary judgment record entitles it to a judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). If the moving party does not have the burden of proof at trial, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Commc'ns Corp., 410 Mass. 805, 809 (1991). “[A]ll evidentiary inferences must be resolved in favor of the [nonmoving party].” Boyd v. National R.R. Passenger Corp., 446 Mass. 540, 544 (2006).
The nonmoving party, however, cannot defeat a motion for summary judgment by merely asserting that facts are disputed. Mass.R.Civ.P. 56(e); LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Rather, to defeat summary judgment the nonmoving party must “go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991). “Conclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient.” Cullen Enters., Inc. v. Massachusetts Prop. Ins. Underwriting Ass’n, 399 Mass. 886, 890 (1987), quoting Madsen v. Erwin, 395 Mass. 715, 721 (1985).

I. The Appeal from the Board’s Decision (Counts I-III)

G.L.c. 40A, §17, provides for de novo review of local zoning boards’ decisions. A judge “determines the legal validity of a zoning board decision on the facts found by him, he gives no evidentiary weight to the board’s findings.” Roberts v. Southwestern Bell Mobile Sys., 429 Mass. 478, 486 (1999); see also Kirkwood v. Board of Appeals, 17 Mass.App.Ct. 423, 427 (1984) (“Since review is de novo, the judge is not restricted to the evidence which was introduced before the board, and the board’s decision carries no evidentiary weight on appeal”). At the same time, “judicial review is nevertheless circumscribed: the decision of the board ‘cannot be disturbed unless it is based on legally untenable ground, or is unreasonable, whimsical, capricious, or arbitrary.’ ” Id. (internal citations omitted).
In the present case, the Rosenfeld’s principal argument appears to be that the Board’s grant of the special permit was arbitrary, capricious, and an abuse of its discretion because the 1998 variance and 2000 amendment to the variance for the Property “are in full force and effect and as such preclude both the issuance of a special permit and the invocation of M.G.L.A. [sic] c. 40A, §3.” In other words, the Rosenfelds contend that the Board was required to ignore the Land Court’s Gray Wolf Decision and its remand order, which expressly held that the variance had lapsed and ordered the Board to consider whether Gray Wolfs proposal was entitled to the statutory agricultural exemption. The Rosenfelds’ contention seems to be premised on an argument that the Gray Wolf Decision is not binding on them because they were not a party to that Land Court proceeding, and therefore the Board should have disregarded it, when Gray Wolf resubmitted its application. The Rosenfelds are mixing apples (their rights as abutters) with oranges (the Board’s obligation to comply with an order issued by a court with jurisdiction over it). The Land Court clearly had jurisdiction to hear Gray Wolfs appeal of the Board’s original denial of its application for a special permit; the Board was a party to that Land Court proceeding; the Board (not the Rosenfelds) enforces Mendon zoning bylaws and determines compliance with variances issued pursuant thereto; the Land Court held that the Board had made an error of law in denying Gray Wolfs application for a special permit based upon the language of the previously issued variance because that variance had lapsed; and the Land Court expressly directed the Board to consider whether Gray Wolfs proposal fell within the agricultural exemption to zoning bylaws provided by G.L.c. 40A, §3. Clearly, the Board did not abuse its discretion or exceed its authority by adhering to the findings in the Gray Wolf Decision and complying with the remand order directed to it.[5]
The court has wrestled with the issue of whether it must convene an evidentiary hearing on the Rosenfeld’s G.L.c. 40A, §17 appeal because of its obligation to conduct “de novo” review. The court concluded that such an evidentiary hearing would be necessary, only if the Rosenfelds intended to introduce evidence that would permit the court to find facts at least suggesting that the Board’s grant of the special permit was erroneous under the applicable standard. Certainly, the Rosenfelds’ principal argument, that the Board erred in concluding that it must abide by the order of the Land Court, turns only on issues of law not fact. Further, the Board determined that the proposed use was entitled to the agricultural exemption based on Gray Wolfs written application and a review of applicable law. At the hearing on the motion for summary judgment, the court therefore asked the Rosenfelds to submit a memorandum describing the *323 evidence that they planned to present at a de novo hearing. The plaintiffs thereafter submitted a memorandum describing concerns about increased traffic on Millville Road, the olfactory and environmental impacts of horse waste and “noise and visual chaos” that the Board allegedly did not consider when it granted the special permit.
In the Gray Wolf Decision, the Land Court directed the Board to consider the applicability of G.L.c. 40A, §3 as it was in effect at the time of Gray Wolfs original application for a special permit (the statute having been amended in 2006). That statute, as then in effect, provided in relevant part that,
[n]o zoning ordinance or by-law shall. . . prohibit, unreasonably regulate, or require a special permit for the use of land for the primary purpose of agriculture . . . nor prohibit, or unreasonably regulate, or require a special permit for the use, expansion, or reconstruction of existing structures thereon for the primary purpose of agriculture . . .
“ ‘[A]griculture’ includes any activity that is part and parcel of raising horses.” Winer v. Zoning Bd. of Appeals of Harwich 18 Mass. L. Rptr. 207 (2004) (holding that “the operation of a riding school does not prevent an owner’s use of the property from being an ‘agricultural’ use”); see also, Bateman v. Board of Appeals of Georgetown, 56 MassApp.Ct. 236, 243 (2002) (“a locus used for raising, training, and boarding of horses, for giving riding lessons, and for the riding use of owners of the boarded horses fell under the agricultural use exemption”), and G.L.c. 128, §1A (“ ’Farming’ or ‘agriculture’ shall include . . . the raising of livestock including horses [and] the keeping of horses as a commercial enterprise . . .”). In consequence, even if the court found that horses may cause waste and olfactory issues, this finding would not have permitted the court to conclude that the Board exceeded its authority by granting a special permit allowing the structures necessary for the horse stable/riding facility to be built. To the contrary, such evidence would not have been grounds to deny a special permit under the relevant, explicit statutory language, and the case law directly on point, that expressly provide that horse farms are agricultural uses and permitted if the property in question is large enough.
The special permit that the Board granted specifically imposed a number of conditions on the construction of the proposed facility and the location and size of certain structures on the Property. The Rosenfelds now seem to argue that their concerns should have required the Board to impose more severe restrictions that would have made Gray Wolfs proposed use untenable. In other words, restrictions that would have accomplished an end run around the agricultural exemption. The Board cannot be said to have acted in an unreasonable, whimsical, capricious, or arbitrary manner for failing to impose those restrictions; and, in any event, the court does not understand that it could second guess the Board on the nature of appropriate restrictions to apply in the context of a §17 appeal and does not find that the Rosenfeld’s proffer of evidence addresses the question of whether the Gray Wolf proposal is entitled to the agricultural exception to the zoning bylaws. Accordingly, none of the evidence that the Rosenfelds plan to offer could cause the court to overturn the Board’s grant of the special permit. For these reasons, the defendants are entitled to summary judgment on Counts I, II and III of the plaintiffs’ complaint.

II. Enforceability of Deed Restrictions (Count IV)

The single-family residence restriction referenced in the variances, that the Land Court held had lapsed, were, however, also incorporated into the deed for the Property. The question presented by this case is whether the Rosenfelds, as owners of land abutting the Properly, may enforce that restriction.
G.L.c. 184, §27 provides, in relevant part, that,
[n]o restriction imposed after [December 31, 1961] shall be enforceable: — (a) unless the person seeking enforcement (1) is a party to the instrument imposing the restriction and it is stated to be for his benefit or is entitled to such benefit as a successor to such parly, or (2) is an owner of an interest in benefited land which either adjoins the subject parcel at the time enforcement is sought or is described in the instrument imposing the restriction and is stated therein to be benefited . . .
In Brear v. Fagan, 447 Mass. 68, 73 n.5 (2006), in dicta, the Supreme Judicial Court noted that there was likely an ambiguity in subsection (a)(2) regarding an adjoining property owner’s right to enforce a deed restriction.
Due to the lack of punctuation, the statute is arguably ambiguous with respect to the requirements for land that adjoins the restricted land. Read one way, §27(a)(2) exempts adjoining land from the requirement that it be “described in the instrument” but still requires that an intent to benefit the adjoining land be stated “therein.” Read another way, the requirement that the intent to benefit be stated “therein” refers only to nonadjoining property that must be “described in the instrument,” because “therein” refers to “in the instrument,” which itself pertains only to non-adjoining property.
Although the SJC did not directly address this ambiguity in deciding the question then before it, it thoughtfully reviewed the legislative history of this section and the considerations that informed the drafting of the statute. It is this review that guides this court’s determination that a deed restriction must specifically mention that an owner of land adjoining a subject parcel is an intended beneficiary of that restriction in order for the adjoining owner to have standing to enforce it.
*324 In Brear, the Court explained that, in enacting G.L.c. 184, §27, “the Legislature intended to modify the common law with respect to enforcement of restrictions on land.” Id. at 73. The Judicial Council, which reviewed and revised the draft legislation, noted that existing common-law rules regarding restrictions on land, “including rules with respect to the identification of those who could properly enforce such restrictions, were not suitable in light of modern conditions.” Id. at 74. Proposed legislation put forth by the Council inserted the language in §(a)(l), that even one who is a party to an instrument containing a restriction may not enforce the restriction unless “it is stated to be for his benefit.” Id. That this identical language appeared in the original version of §27(a), as enacted by the Legislature, suggests that the Legislature shared the Council’s concern “that the identification of beneficiaries who could enforce land restrictions had become ‘exceedingly difficult’ under the common law rule, and that the identity of beneficiaries should be explicitly stated in the instrument creating the restrictions.” Id. at 75.
The Rosenfelds argue for the interpretation that only non-adjoining property owners need have their right to enforce a restriction mentioned in the instrument creating the restriction; however, the dicta in Brear calls for the opposite result. Were §27(a)(2) to be read as the Rosenfelds suggest, the concerns about identifying potential beneficiaries and removing unreasonable restrictions would remain with respect to owners of adjoining property, who could be many in number if the tract were large. That construction of (a)(2) would require a trial as to whether any or all adjoining property constituted “benefitted land” within the meaning of the statute. This could be a fact intensive proceeding often turning on aesthetics, as would be the case in the instant matter. This interpretation therefore would not further the legislation’s express purpose to “supplant [] common law rules with clearer, more definitive, and more efficient methods of resolving the enforceability of land restrictions.” Brear, 447 Mass. at 74. An interpretation of the statute that requires all owners mentioned in the statute, including both owners who were parties to the instrument that imposed the restriction and owners of adjoining property, to be identified as beneficiaries of the restriction would best achieve the Legislature’s purpose.
In the present case, the plaintiffs are not described as beneficiaries of the restriction in the deed for the Property. As a matter of law, therefore, the plaintiffs cannot enforce that restriction, and the defendants are entitled to summary judgment on Count IV.

III. Breach of Contract (Count V)

The December 3, 2003 Agreement executed between J on Rosenfeld and Ellen Trust, on the one hand, and Salvador and Therrien, on the other, does expressly refer to the variances authorizing the construction of a single-family dwelling on the Property. However, all that the Agreement states with respect thereto is that Rosenfeld and Ellen Trust will not oppose or object to the construction of such a dwelling on the Property. The Agreement says nothing that could be construed as a representation that Salvador (or Gray Wolf) will not attempt to develop the property for a different use. Gray Wolfs efforts to develop a horse stable/riding facility therefore cannot constitute a breach of the Agreement and neither Rosenfeld nor Ellen Trust contend that any other action by the counterparties constitutes a breach. The defendants are entitled to summary judgment on Count V.

IV. Misrepresentation (Count VI)

The Rosenfelds also appear to rely on the Agreement for their misrepresentation claim. However, as noted above, there is nothing in the Agreement that constitutes a representation that any defendant will not develop the Property for another use. The Rosenfelds have not presented any other evidence that any defendant represented either orally or in writing that he or it would not attempt an alternate use of the Property. Without such a statement, the Rosenfelds’ misrepresentation claim lacks the first element of the cause of action — a false statement of a material fact. McEneaney v. Chestnut Hill Realty Corp., 38 Mass.App.Ct. 573, 575 (1995) (“A claim for misrepresentation requires that a plaintiff show a false statement of material fact made to induce the plaintiff to act and reliance on the false statement by the plaintiff to his detriment”). The defendants are, therefore, entitled to summary judgment on VI.

ORDER

It is hereby ORDERED that the motion for summary judgment is ALLOWED as to all counts. Judgment shall enter dismissing the complaint as to all counts and all defendants and declaring that the Special Permit granted by the Board to Gray Wolf remains in effect.

Although the motion has been filed by only these two defendants, if allowed, it disposes of the case as to all defendants.

Salvador is a principal of Gray Wolf.

The Rosenfelds argue that Cornell v. Board of Appeals of Dracut, 453 Mass. 888 (2009), decided on May 22, 2009, a year after the Gray Wolf Decision and more than six months after the Board granted the special permit, could or should have caused the Land Court to reach a different conclusion on the question of whether the 1998/2000 variance lapsed. The court finds that Cornell actually supports both the Land Court’s reasoning and holding in the Gray Wolf Decision. But more to the point, the fact that some months after the Board voted on Gray Wolfs application, the Supreme Judicial Court issued a decision clarifying when a variance lapses could not possibly have affected the Board’s obligation to comply with an order of the Land Court expressly directed to it.