DANIEL J. APFEL & another,[1] trustees,[2] *vs.* WAYNE A. MILLER.

No. 13-P-1508.

Suffolk. April 10, 2014. - June 13, 2014.

Present: GRAINGER, RUBIN, & HANLON, JJ.

*Real Property,* Registered land, Restrictions. *Mistake. Practice, Civil,* Summary judgment.

In a civil action brought in the Land Court by plaintiffs seeking a judgment declaring that certain restrictive covenants applied to a parcel of registered land owned by the defendant, the judge properly granted summary judgment in favor of the defendant, where restrictions created in 1985 as effective for twenty years expired in 2005, and the plaintiffs could not reach back and extend their effect in order to invalidate actions taken in the past that were unchallenged at the time [452-454]; and where there was no support in the record for a claim that covenants created in 2005 were subject to reformation for mutual mistake [454-456].

CIVIL ACTION commenced in the Land Court Department on June 4, 2009.

The case was heard by *Karyn F. Scheier,* J., on motions for summary judgment.

*David J. Apfel* (*Maren Klawiter* with him) for the plaintiffs.

*Joel Z. Eigerman* for the defendant.

GRAINGER, J. The plaintiffs, trustees of the Penny Apfel-Rechtschaffen Nominee Trust (trust), brought a declaratory judgment action in the Land Court seeking the application of certain restrictive covenants to a parcel of registered land owned by the defendant Wayne A. Miller.[3] The judge denied the

---

[1] Lisa Rechtschaffen.

[2] Of the Penny Apfel-Rechtschaffen Nominee Trust.

[3] In count I of their verified complaint, the plaintiffs seek a declaration that certain registered covenants filed in 1985 are valid and enforceable against a parcel of land (lot 7) now owned by Miller. They alternatively seek to reform successor covenants registered in 2005 and apply those covenants, as reformed,

plaintiffs' motion for partial summary judgment, allowed the defendant's motion for summary judgment, and entered a declaratory judgment resolving all of the issues in favor of the defendant. See *Boston* v. *Massachusetts Bay Transp. Authy.*, 373 Mass. 819, 829 (1977). The plaintiffs filed a timely appeal.

1. *Background*. The facts are undisputed. The parties are abutting landowners. The trust holds title to registered land designated as lot 1 of the Boldwater residential subdivision in Edgartown. Miller owns lot 7 in the subdivision.

a. *The parties' chains of title*. The trust acquired title to lot 1 as the high bidder at a foreclosure sale conducted by Plymouth Savings Bank (bank). The owner and mortgagor at the time of sale was Thomas C. Wallace, the president of Boldwater, Inc., an entity that originally had held title to the land now comprising the subdivision. Wallace took title to lot 1 when the subdivision was created. Thereafter he also acquired title to what is now denominated lot 7, land that was originally a portion of lot 2 at the time of the creation of the subdivision.[4]

To finance these real estate acquisitions, Wallace borrowed money not only from the bank, but also from the defendant Miller. As collateral Wallace granted Miller a second mortgage on lot 1, subordinate to the bank. Miller also received a third mortgage on lot 7, subordinate to the bank (second position) and subordinate to Clifford Meehan (first position).

The proceeds derived from the plaintiffs' purchase of lot 1 were sufficient to retire the entire debt collateralized by the bank's mortgages on both lots 1 and 7. Consequently, when Meehan thereafter foreclosed his first mortgage on lot 7, Miller was in second position. Miller submitted the high bid, and

to lot 7. Count II seeks a declaration that the division of land creating lot 7 was invalid as a violation of the 1985 covenants and that the subsequent transfer of lot 7 to Thomas C. Wallace was consequently invalid as a transfer of an illegally created lot. Count III seeks a declaration that certain mortgages of record affecting title to lot 7 are invalid, insofar as their mortgagor's title is in question. Count IV seeks a declaration that lot 7 is not an independently buildable lot and that the only parties who can build on lot 7 are the owners of abutting parcels.

[4]In 2001, the original purchaser of lot 2, Najeeb Halaby, subdivided lot 2 into two parcels, designated lots 7 and 8, through the submittal of an application to the planning board of Edgartown for an approval not required (ANR) plan. In 2002, Halaby deeded lot 7 to Wallace.

eventually became the title holder.[5] Thus the parties became neighbors.

b. *The covenants.* Three sets of protective covenants have been applied successively to the subdivision in 1985, 2005, and 2010. They each permit the construction of one principal residence, one guesthouse, and various outbuildings on each lot in the subdivision. Additionally:

(1) The 1985 covenants were registered as effective for twenty years at the time the subdivision was created. They made further division of the lots contingent on approval by Boldwater, Inc.'s architectural review committee, by the planning board of Edgartown (board), and under G. L. c. 41. They required the filing of a definitive subdivision plan with the board for any further subdivision, and they prohibited the filing of any plan not requiring approval (ANR);

(2) The 2005 covenants added a specific list of the lots to which the covenants applied, including lots 7 and 8. They introduced greater flexibility to the subdivision approval process, allowing either an ANR or a definitive subdivision plan to be submitted to the board; and

(3) The 2010 covenants reiterated the list of lots to which they applied, including lots 7 and 8, and prohibited any further division of lots in the subdivision.

2. *Discussion.* a. *Standard of review.* We begin with the familiar principle that "[t]he standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.,* 410 Mass. 117, 120 (1991). See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002). This court reviews the grant of summary judgment de novo. See *Matthews* v. *Ocean Spray Cranberries, Inc.,* 426 Mass. 122, 123 n.1 (1997).

b. *Application of the 1985 covenants to the creation of lot 7.* The plaintiffs assert that the division of lot 2 into lots 7 and 8 was in violation of the 1985 covenants, rendering lot 7 legally

---

[5]In actuality Meehan took title himself at the sale; Miller then exercised an option on lot 7 that the two had previously negotiated.

nonexistent. Hence the ensuing conveyance of lot 7 to Wallace and the subsequent mortgages are nullities, and lot 7 is unbuildable. The defendant argues first that the creation of lot 7 and its subsequent conveyance to Wallace were not in violation of the 1985 covenants. Alternatively, he maintains that even if the 1985 covenants were violated while they were in effect, they can no longer be enforced after their expiration. In response to this final point the plaintiffs contest the characterization of their suit as one for the enforcement of expired covenants.

The application of summary judgment to this claim is dependent on the plaintiffs' ability to apply the 1985 covenant restrictions to the present-day viability of lot 7. Our inquiry is whether an act that violated restrictions in effect when it was committed[6] can be invalidated retroactively, after the restrictions are no longer in effect.

We consider certain cases cited by the judge as instructive on the issue, specifically *Stop & Shop Supermarket Co.* v. *Urstadt Biddle Properties, Inc.*, 433 Mass. 285 (2001) (*Stop & Shop*), and *Brear* v. *Fagan*, 447 Mass. 68 (2006). In *Stop & Shop, supra* at 288-289, the Supreme Judicial Court considered the effect of a "notice of restriction" filed pursuant to G. L. c. 184, § 27, in determining the length of time that the restriction at issue remained enforceable. The court distinguished between covenants containing explicit expiration dates and those that expired after thirty years by operation of law because the covenants themselves were silent as to the length of time they were intended to remain in effect. *Ibid.* See G. L. c. 184, §§ 23, 27(*b*). The court noted that covenants containing explicit expiration dates could be enforced after the stated date by filing a notice of restriction before the expiration date. *Id.* at 290-291. This simply recognizes the truism that an agreement can be amended by the consent of the parties. However, where the expiration date is established by operation of law because the parties have not agreed on one, a filing prior to the statutory expiration cannot extend a restriction because after expiration "there is nothing left to 'enforce[].' " *Brear* v. *Fagan, supra* at

---

[6]For purposes of summary judgment, we assume without deciding that the 1985 covenants were violated by the creation of lot 7. We therefore do not address the parties' arguments related to specific provisions in the 1985 covenants.

77. The court observed that without this distinction, notices of restriction could be employed to extend restrictive covenants in perpetuity in contravention of the statutory limit and noted "that restrictions on land are disfavored, and they 'in general are to be construed against the grantor and in favor of freedom of alienation.' " *Stop & Shop, supra* at 290, quoting from *Ward* v. *Prudential Ins. Co.*, 299 Mass. 559, 565 (1938).

In *Brear* v. *Fagan, supra*, the court again discussed, albeit in dictum,[7] the filing of notices intended to allow enforcement of claims based on restrictive covenants brought after the covenants themselves had expired. The court again referred to the purposes of statutory reforms enacted in G. L. c. 184 "to enable landowners to rid their land of obsolete restrictions, and to provide definitive endpoints to the terms of such restrictions." *Brear* v. *Fagan, supra* at 77. Additionally pertinent here, the court also noted that "nothing in [the statutory scheme] allows a party unilaterally to extend the restrictions beyond the term previously agreed to by the parties." *Id.* at 76.

The 1985 Boldwater restrictions expired in 2005. In this appeal we are presented not only with their undisputed expiration but also with the fact that they were replaced by the 2005 covenants. Whether the plaintiffs' requested relief is characterized as "enforcement" or provided with an alternate label, it is clear that this action unilaterally seeks to reach back and extend the effect of expired covenants in order to invalidate actions taken in the past that were unchallenged at the time. The case law discussed above establishes that the covenanting parties could have extended the restrictions. They chose not to do so. The judge rightly determined that their decision cannot be challenged by a new landowner after the fact.

c. *Application of the 2005 covenants to the creation of lot 7.* The plaintiffs acknowledge that the plain language of the 2005 covenants, in effect at the time they purchased lot 1, does not invalidate either the creation of lot 7 or the ensuing transfers of title and mortgage interests in that lot. They assert however that the 2005 covenants are subject to reformation for mutual mistake and, once reformed, would invalidate the creation of lot 7. The

---

[7]The case turned on a determination that the party seeking to enforce the restriction was not the intended beneficiary. *Brear* v. *Fagan*, 447 Mass. at 73.

judge allowed the defendant's motion for summary judgment on this count for lack of any evidence in support. We agree.

As the judge stated, a mutual mistake supporting reformation is a mistake common to all the parties. See *Ward* v. *Ward*, 70 Mass. App. Ct. 366, 369 n.4 (2007). See also *Eno* v. *Prime Mfg. Co.*, 317 Mass. 646, 650 (1945). By asserting this claim the plaintiffs assumed the burden to demonstrate either that all the parties to the 2005 covenants mistakenly thought that they had maintained restrictions rendering the creation of lot 7 invalid, or that some of the signatory landowners understood that they were abrogating those restrictions and failed to inform the remaining signatories of that fact. See *Ward* v. *Ward*, *supra* at 369 n.5 (analogizing failure to correct another party's known mistake to misrepresentation by silence).

The only evidence on the record is to the contrary. The plaintiffs cannot show that all parties thought that they had continued to maintain restrictions abrogating the creation and transfer of lot 7 because the creator, transferor, and transferee were among the covenanting landowners. Assuming the unlikely, namely that Halaby and Wallace believed that they had dedicated considerable time and financial resources to achieve a nullity, there is neither evidence nor any rationale to support the argument that in 2005 they intended to ratify the futility of their prior dealings. Neither is there any evidence that Wallace and Halaby failed to inform the other signatories. To the contrary, lots 7 and 8 are prominently listed as existing lots in the subdivision to which the 2005 covenants would be applied.[8] While the plaintiffs make unsupported factual assertions that the other landowners

---

[8]The plaintiffs assert, without citation to legal authority, that the creation of lot 7 was an "invalid act" that is "void ab initio." See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). We are aware of no reason to consider the lot void ab initio based simply on the fact that it violated applicable covenants at the time of its creation. Plaintiffs (or their predecessors in title) had two potential avenues by which to challenge the board's "invalid act" of approving lot 7 through an ANR application: (1) a petition for certiorari review of the allegedly invalid division of the lot, pursuant to G. L. c. 249, § 4, see *Stefanick* v. *Planning Bd. of Uxbridge*, 39 Mass. App. Ct. 418, 424-425 (1995), or (2) an action under G. L. c. 41, § 81Y. However, the statute of limitations had long since run on both avenues of attack when plaintiffs acquired title to lot 1. See *Murphy* v. *Donovan*, 4 Mass. App. Ct. 519, 529 (1976) ("One of the purposes of the 1953 revision of the Subdivision Control Law was to lessen the chance that defects in title would arise as a result of conveyances

had a mistaken understanding of the legal consequences flowing from the 2005 covenants, there is no evidence to support a conclusion that they were not placed on notice by the documents with which they were provided.[9]

*Judgment affirmed.*

which did not comply with the Subdivision Control Law"). Thus, the plaintiffs' argument that lot 7 is invalid is time-barred.

[9]The plaintiffs also assert error in the judge's determination that they lack standing to seek reformation of the 2005 covenants, an argument we need not address.